## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

FEDERAL TRADE COMMISSION,

    Plaintiff,

    v.

PRO CREDIT GROUP, LLC, *et al.*,

    Defendants.

**Case No. 8:12-cv-586-T35-MSS-EAJ**

## MOTION FOR ENTRY OF DEFAULT JUDGMENT AND
## ORDER FOR PERMANENT INJUNCTION AND OTHER EQUITABLE RELIEF
## AS TO DEFENDANTS MY SUCCESS TRACK, LLC AND
## CONSUMER CREDIT GROUP, LLC

Plaintiff, Federal Trade Commission ("FTC" or "Commission"), respectfully

moves this Court, pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, to

enter the attached default judgment against corporate defendants My Success Track, LLC

("MST") and Consumer Credit Group, LLC ("CCG") (Attach. A).  The Clerk of this

Court properly entered defaults against MST and CCG on October 17, 2012, because

these unrepresented corporate defendants never filed Answers through counsel (Dkt.

#159, 160).

Given defendants' defaults, and the evidence on record of consumer harm

resulting from defendants' violations of the FTC Act and the Telemarketing Sales Rule

("TSR"), plaintiff requests that this Court enter the attached proposed default judgment,

which contains a permanent injunction and other equitable relief.  The Court has entered

Stipulated Permanent Injunctions against all unrepresented individual defendants (Dkt. #209-212).  Only the unrepresented corporations remain, and they cannot proceed *pro se* in this matter.  Thus, the requested default judgment – along with the separaterly-requested default judgment against unrepresented corporate defendant Pro Credit Group, LLC – is necessary to resolve the remaining claims in this action.

## I.    BACKGROUND

On March 19, 2012, the FTC filed a Complaint for Permanent Injunction and Other Equitable Relief against CCG and MST, along with several other corporations and individuals,[1] detailing their violations of Section 5(a) of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 45(a), and the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310 (1995) (as amended), in connection with the alleged deceptive marketing of a service to lower consumers' credit card interest rates (the "LI service").  To sell the LI service, defendants ran or hired call centers that contacted consumers through outbound calling or robocalls, offering to reduce consumers' interest rates on all their credit cards and to save consumers thousands of dollars in interest charges.  Rather than negotiating lower interest rates for consumers, however, defendants typically gave consumers a "budget plan" that illustrated the obvious:  they could pay off their credit cards early by incurring no new charges and making payments that exceeded the required monthly minimums.

---

[1] The other defendants to this action include:  (1) corporate defendants Pro Credit Group, LLC (against whom the Clerk entered a default on Dec. 18, 2012 (Dkt. #191)), Sanders Legal Group, P.A., Sanders Law, P.A., and First Financial Asset Services, Inc.; and (2) individual defendants Brett Fisher, Andre Keith Sanders, Dale Robinson, and William Balsamo.

Upon filing this action, the FTC asked the Court to issue an *ex parte* Temporary Restraining Order ("TRO") to halt defendants' deceptive acts (Dkt. #10).  In connection with its Memorandum in support of the TRO ("TRO Memo") (Dkt. #10), the FTC introduced voluminous evidence against CCG, MST, and the other defendants who marketed the LI service.  This evidence included twenty consumer declarations[2]; a declaration from the West Florida Better Business Bureau providing details regarding consumer complaints (FTC 33); a declaration from the Florida Department of Agriculture and Consumer Services containing scripts and other evidence (FTC 37); and a declaration from an FTC investigator containing information relating to financial records, undercover calls, and other evidence (FTC 39).  Upon due consideration, on March 20, 2012, this Court found probable cause that the defendants were violating the FTC Act and the TSR, and that there was good cause to issue the TRO with an asset freeze on an *ex parte* basis because of the defendants' ongoing violations.  (Dkt. #11-1).  Defendants MST and CCG were properly served with the Complaint in this action[3] but neither retained counsel or filed an Answer.

On November 14, 2012, the Court entered the FTC's Amended Complaint, which, based on newly-discovered evidence, elaborated on the counts in the Complaint, and

---

[2] FTC 6, Agreen; FTC 7, Blair; FTC 8, Browning; FTC 9, Carnes; FTC 10, Cielo; FTC 11, Crafton; FTC 12, Gertz; FTC 13, Halliday; FTC 14, Hendryx;  FTC 15, Ingram; FTC 16, Leftwich; FTC 17, Malerbi; FTC 18, Sarzynski; FTC 19, Sollmann; FTC 20, Stewart; FTC 21, Syster; FTC 22, Trimble; FTC 23, York; FTC 24, Zalewski; FTC 41, Ponikvar.

[3] On March 21, 2012, CCG was served with the summons, Complaint, TRO, and other original pleadings in this Action (Dkt. #41).  MST was served with the same documents on April 2, 2012 (Dkt. #83).

added an additional count addressing defendants' use of a prohibited prerecorded message to market their products in violation of the TSR.[4]  On November 14, 2012, the Amended Complaint was served via ECF upon the Court-appointed Receiver (Dkt. #183), an agent "authorized by appointment or by law to receive service of process" for both MST and CCG.  Fed. R. Civ. P. 4(h)(1)(B).[5]  Thus, both MST and CCG were properly served with both the Complaint and the Amended Complaint.

The Amended Complaint[6] charges that CCG and MST violated Section 5 of the FTC Act and Section 310.3(a)(2)(x) of the TSR by operating as a common enterprise with other defendants[7] to deceptively market the LI service to consumers.  Specifically, defendants violated the FTC Act and the TSR by misrepresenting that:  (1) they were affiliated, or had established relationships, with consumers' lenders; (2) they would negotiate lower interest rates for consumers within a few months; (3) consumers would save thousands of dollars as a result of their negotiations; (4) consumers would receive

---

[4] Although the Amended Complaint added a new count relating to defendants' TSR violations, it did not request any additional relief beyond what the FTC requested in its original Complaint.

[5] Pursuant to Fed. R. Civ. P. 5(a)(2), "[n]o service is required on a party who is in default for failing to appear.  But a pleading that asserts a new claim for relief against such a party must be served on that party under Rule 4."  The Amended Complaint sought no new relief, but, regardless, both the Receiver and Dale Robinson, the principal of both MST and CCG, were served with the Amended Complaint.

[6] This Motion discusses the Amended Complaint only as it relates to CCG and MST. The Amended Complaint contains other Counts and factual allegations that pertain to other defendants not discussed herein.

[7] The common enterprise to market the LI service consisted of defendants Brett Fisher; Andre Keith Sanders; Dale Robinson; William Balsamo; CCG; MST; Pro Credit Group, LLC; Sanders Law, P.A.; and First Financial Asset Services, Inc.

assistance from personal financial consultants; and (5) consumers would receive full refunds (Counts Two and Four, Am. Compl. ¶¶ 53-54; 67-68). The Amended Complaint further charges that CCG and MST violated § 310.4(a)(5)(i) of the TSR by requesting and receiving a prohibited advance payment in connection with the telemarketing of the LI service (Count Three, Am. Compl. ¶¶ 65-66); and § 310.4(b)(1)(v) of the TSR by initiating, or causing others to initiate, outbound telephone calls that deliver prerecorded messages to induce the purchase of goods or services (Count Six, Am. Compl. ¶¶ 71-72).

On October 17, 2012, after reviewing the docket and determining that they had not filed a sufficient Answer to plaintiff's complaint, the Clerk entered defaults against CCG and MST. (Dkt. #159, 160); *see* Fed. R. Civ. P. 55(a). Although the Court entered the Amended Complaint one month after the Clerk entered defaults against MST and CCG, defendants received notice of the Amended Complaint through their Court-appointed Receiver and, more than six months later, have yet to enter an appearance or defend against this action in any way. Additionally, Dale Robinson, a principal of both CCG and MST, has participated in this action *pro se*, had full notice of the pending action as it pertains to CCG and MST, and declined to hire licensed counsel to represent the corporations. *See* FTC 39, Goldstein Decl. at Attach. N p.1 (Sunbiz.org document listing Dale Robinson as the Manager and Registered Agent for CCG); FTC 68, Dyar Dep. at 63:3-5 (MST "is owned by Dale [Robinson] and it's just a general thing that we call it as Consumer Credit Group."). Therefore, as the Court noted in its Order staying this action pending FTC review of proposed settlements, MST and CCG remain in default at this time. (Dkt. #203 at 1 n.1).

## II.    ARGUMENT

Because unrepresented and defaulted corporate defendants MST and CCG[8] have, over a year into this litigation, not filed a sufficient Answer and there is no indication that they will obtain counsel or effectively participate in this action, the Court should enter a default judgment against them pursuant to Fed. R. Civ. P. 55(b)(2).  This Court has held that "[t]he effect of the entry of a default is that all of the factual allegations in the complaint are taken as true, save for the amount of unspecified damages."  *Enpat, Inc. v. Budnic*, 773 F. Supp. 2d 1311, 1313 (M.D. Fla. 2011) (citing *Buchanan v. Bowman*, 820 F.2d 359 (11th Cir. 1987)).  *See also Cotton v. Mass. Mut. Life Ins. Co*., 402 F.3d 1267, 1278 (11th Cir. 2005) ("[A] defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact."); *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999) (same).

The Clerk entered defaults against corporate defendants MST and CCG on October 17, 2012 (Dkt. #159, 160).  Taking the factual allegations contained in the Commission's Amended Complaint as true, plaintiff has alleged sufficient facts to constitute a cause of action under Section 5 of the FTC Act and the TSR.  Defendants MST and CCG have filed no responsive papers through qualified counsel; therefore, plaintiff is entitled to default judgment.

---

[8] It is well-established that "a corporation may appear in the federal courts only through licensed counsel."  *Rowland v. Calif. Men's Colony*, 506 U.S. 194, 201-02 (1993); *see also* M.D. Fla. Local Rule 2.03(e); *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985).

A. **A Default Judgment Should Be Entered because Defendants Are Deemed to Admit the Complaint's Allegations and Damages are Ascertainable.**

The entry of default against MST and CCG and the evidence of record establish that they have violated the FTC Act and the TSR as described in the FTC's filings. Default judgment is therefore a proper resolution of the case against these defendants. Indeed, the FTC has provided this Court with thorough, uncontroverted support for its allegations against MST and CCG. *See* Plaintiff's TRO Memo (Dkt. #10-1), submitted Mar. 19, 2012, and accompanying exhibits; *see also* Plaintiff's Supplemental Brief Providing Newly-Discovered Evidence in Support of Its Motion for Preliminary Injunction (Dkt. #98), submitted Apr. 16, 2012; *and* FTC 43-FTC 74 (Dkt. # 122), submitted Apr. 30, 2012 (exhibits filed with the Court in support of the FTC's Motion for Preliminary Injunction).

Section 5 of the FTC Act prohibits "unfair or deceptive acts or practices in or affecting commerce[.]" 15 U.S.C. § 45(a). An act or practice is deceptive under Section 5 if: "(1) there was a representation; (2) the representation was likely to mislead consumers acting reasonably under the circumstances; and (3) the representation was material." *FTC v. Transnet Wireless,* 506 F. Supp. 2d 1247, 1266-67 (S.D. Fla. 2007) (citing *FTC v. Tashman,* 318 F.3d 1273, 1277 (11th Cir. 2003)). "A representation is material if it is of a kind usually relied upon by a reasonably prudent person." *Id.* (citing *FTC v. Jordan Ashley, Inc.,* 1994-1 Trade Cas. (CCH) P 70570 at 72,096 (S.D. Fla. 1994)); *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 573 (7th Cir. 1989). "A presumption of actual reliance arises once the FTC has proved that the defendants made

material misrepresentations, that they were widely disseminated, and that consumers

purchased the defendants' product." *Transnet Wireless,* 506 F. Supp. 2d at 1266-67

(quoting *FTC v. Figgie Int'l, Inc.,* 994 F.2d 595, 605 (9th Cir. 1993), *cert. denied,* 510

U.S. 1110 (1994)).  "Express claims, or deliberately made implied claims, used to induce

the purchase of a particular product or service are presumed to be material."  *Id.*, 506 F.

Supp. 2d at 1266-67.

## 1. MST and CCG are part of a common enterprise to engage in the marketing of the deceptive LI service.

Defendants MST and CCG, along with defendants Pro Credit Group, LLC

("PCG"), Sanders Law, P.A. ("Sanders Law"), and First Financial Asset Services, Inc.

("First Financial") have operated as a common enterprise while engaging in the LI

service.  Defendants operated through an interrelated network of companies that shared

business functions, office locations, phone numbers, and advertising and held themselves

out to consumers as the same company.  Am. Compl. ¶17.  Defendants Brett Fisher,

Andre Keith Sanders, Dale Robinson, and William Balsamo formulated, directed,

controlled, had the authority to control, or participated in the acts and practices of MST,

CCG, PCG, Sanders Law, and First Financial that constitute the common enterprise.  *Id.*

## 2. LI Defendants made material misrepresentations in violation of the FTC Act and the TSR.

Defendants made material misrepresentations to consumers that:  (1) they were

affiliated, or had established relationships, with consumers' lenders; (2) they would

negotiate lower interest rates for consumers within a few months; (3) consumers would

save thousands of dollars as a result of their negotiations; (4) consumers would receive

assistance from personal financial consultants; and (5) consumers would receive full refunds.  They made these representations to consumers in numerous instances, and consumers purchased defendants' service after hearing these representations.  *See, e.g.,* Consumer decls. submitted in conjunction with TRO Memo.  In fact, defendants had no affiliation or relationship with consumers' lenders, *see* Zuzek Dep. at 76:18-77:16 (Attach. B).  Furthermore, defendants made only cursory efforts to negotiate lower rates and likely failed to obtain any interest rate reduction for at least 50% of their customers, *see* Yoeli Expert Report at 11:9-15 (Attach. C, exhibits omitted), let alone significant savings as a result of interest rate reduction.  *See also* TRO Memo at 11-12 (Dkt. #10).  Additionally, consumers did not receive assistance from personal financial consultants, *see* York Decl., FTC 23; and, although a no-questions-asked refund policy was central to defendants' initial pitch, defendants made it as difficult as possible for consumers to obtain refunds, rarely granted full refunds, and often only did so after consumers filed BBB complaints.  *See* TRO Memo at 12-15 (Dkt. #10).

Defendants also violated the TSR when they:  (1) offered the LI program to consumers in exchange for payment of advance fees; (2) made the above-described misrepresentations; and (3) marketed their services nationwide through prohibited prerecorded messages or "robocalls."  *See* Count Three, Am. Compl. ¶¶ 65-66; Count Four, Am. Compl. ¶¶ 67-68; and Count Six, Am. Compl. ¶¶ 71-72.

Defendants are "seller[s]" or "telemarketer[s]" engaged in "telemarketing," as those terms are defined in the TSR, 16 C.F.R. § 310.2(aa), (cc), and (dd).  The TSR prohibits, among other things:  (1) requesting or receiving payment of any fee for any

debt relief service until and unless the telemarketer has renegotiated or otherwise altered the terms of at least one debt pursuant to a valid contractual agreement and the customer has made at least one payment pursuant to that agreement, 16 C.F.R. § 310.4(a)(5)(i); (2) misrepresenting, while engaged in telemarketing, material aspects of any debt relief service, including the amount of money that a customer may save by using such service, 16 C.F.R. § 310.3(a)(2)(x); and (3) initiating an outbound telephone call that delivers a prerecorded message to induce the purchase of a good or service unless the seller has obtained from the recipient of the call an express agreement, in writing, agreeing to receive calls that deliver prerecorded messages by or on behalf of a specific seller, 16 C.F.R. § 310.4(b)(1)(v)(A) and (B).

As members of the LI common enterprise, MST and CCG are jointly and severally liable for these violations of the FTC Act and the TSR.

Although the Court need not look beyond the allegations of the Amended Complaint, the evidence the FTC has submitted to the Court confirms MST's and CCG's liability.  This evidence includes consumer and investigator declarations, corporate documents, and marketing materials submitted as part of plaintiff's TRO Memo, along with the voluminous complaints and other documents submitted to the Court in advance of the preliminary injunction hearing.  As a result, default judgment is appropriate in this case.[9]

---

[9] While the Eleventh Circuit's preference is to dispose of cases on the merits, *see Wahl v. Melver*, 773 F.2d 1169, 1174 (11th Cir. 1985), the FTC has presented voluminous evidence of defendants' liability, and they have failed to file an Answer in more than a year.  Moreover, their principal and the Receiver have given no indication that they will

**B. The Court Should Enter the Attached Default Judgment against the Corporate Defendants, Including a Permanent Injunction and a Monetary Judgment of $18,468,058.**

This Court has broad authority to issue equitable relief, and entry of the attached default judgment (Attach. A) containing a permanent injunction and provisions for financial redress is appropriate to prevent and remedy consumer injury caused by the corporate defendants in this case.

**1. The Default Judgment against Corporate Defendants Should Include the Requested Injunctive Relief.**

The Court should enter a default judgment against CCG and MST that contains broad injunctive relief.  Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), provides that "in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction."  Pursuant to Section 13(b), the FTC may seek a permanent injunction against violations of "any provision of law enforced by the Federal Trade Commission."  15 U.S.C. § 53(b).  *See, e.g.*, *FTC v. Gem Merch. Corp.*, 87 F.3d 466, 468 (11th Cir. 1996); *see also FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 571-72 (7th Cir. 1989); *FTC v. Transnet Wireless*, 506 F. Supp. 2d 1247, 1271 (S.D. Fla. 2007) (stating that Section 13(b) provides the Court with "the authority to exercise its full equitable powers . . . to remedy violations of Section 5 of the Act."). This case, which involves violations of Section 5(a) of the FTC Act and the TSR in connection with the sale of a deceptive interest rate reduction service, qualifies as a "proper case" for injunctive relief under Section 13(b).  *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1111 (9th Cir. 1982)

---

retain qualified counsel to represent these corporations, making default judgment the best means of resolving the case against these corporate defendants.

(holding that a "routine fraud case" is a "proper case" for permanent injunctive relief under 13(b)).

Section 13(b) of the FTC Act expressly authorizes the issuance of a permanent injunction to prevent further violations. 15 U.S.C. § 53(b); *Gem Merch.,* 87 F.3d at 468. A permanent injunction is justified when there is a "cognizable danger of recurrent violation" that goes beyond a "mere possibility." *U.S. v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953). Prior illegal conduct is highly suggestive of the likelihood of future violations. *SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980) ("The existence of past violations may give rise to an inference that there will be future violations."); *see also SEC v. Am. Bd. of Trade*, 751 F.2d 529, 537-38 (2d Cir. 1984); *SEC v. Mgmt. Dynamics, Inc.,* 515 F.2d 801, 807 (2d Cir. 1975). Here, defendants' violations of Section 5(a) of the FTC Act and the TSR create a "cognizable danger" that they will continue to violate the law. *W.T. Grant Co.,* 345 U.S. at 633. Therefore, a permanent injunction against these defendants is appropriate and necessary to protect the public from their further violations of the FTC Act.

The FTC's proposed Default Judgment and Order for Permanent Injunction and Other Equitable Relief includes conduct prohibitions in the form of two permanent bans that are reasonably related to corporate defendants' unlawful practices, as well as fencing-in relief to protect consumers from similar misconduct in the future. Moreover, this injunctive relief is identical to that imposed on Defendant Robinson, the principal of CCG and MST, pursuant to his Stipulated Permanent Injunction (Dkt. #211).

Sections I and II of the FTC's proposed Default Judgment contain bans on telemarketing and debt relief services.  Courts have ordered broad bans on otherwise legitimate behavior based on the past conduct of defendants as a means of preventing future law violations in numerous FTC cases.  *See, e.g.*, *FTC v. RCA Credit Servs., LLC*, No. 8:08-cv-2062-T-27MAP, 2010 U.S. Dist. LEXIS 143755, at *4-5 (M.D. Fla. Oct. 15, 2010) (ban on marketing any credit repair product or service); *FTC v. Neiswonge*r, 494 F. Supp. 2d 1067, 1083-84 (E.D. Mo. 2007), *aff'd*, 580 F.3d 769 (8th Cir. 2009) (imposing permanent bans); *FTC v. Gill*, 265 F.3d 944, 957-58 (9th Cir. 2001) (ban on participation in credit repair business); *McGregor v. Chierico*, 206 F.3d 1378, 1386 n.9 (11th Cir. 2000) (affirming ban on telemarketing in FTC case); *FTC v. Five-Star Auto Club, Inc.*, 97 F. Supp. 2d 502, 536 (S.D.N.Y. 2000) (ban on all multi-level marketing); *FTC v. Jordan Ashley, Inc.*, No. 93- 2257, 1994 WL 200775, at *5 (S.D. Fla. Apr. 5, 1994) (imposing permanent ban).

Defendants relied almost exclusively upon telemarketing to deceive consumers into purchasing a deceptive debt relief service and have shown that they will not engage in the business of telemarketing lawfully.  Therefore, the FTC proposes a default judgment containing permanent bans on telemarketing and debt relief services to prevent highly foreseeable future consumer injury.  These permanent bans bear a "reasonable relation" to the violations that they are intended to remedy.  *Telebrands Corp. v. FTC*, 457 F.3d 354, 358 (4th Cir. 2006).  The Court's broad power to grant injunctive and other equitable relief includes the authority to enter injunctive "fencing in" relief to prevent future violations of the FTC Act.  *See FTC v. Colgate-Palmolive Co.*, 380 U.S. 374, 395

(1965).  "The Commission is not limited to prohibiting the illegal practice in the precise form in which it is found to have existed in the past."  *Id.* (quoting *FTC v. Ruberoid Co.*, 343 U.S. 470, 473 (1952)).  "Having been caught violating the Act, respondents 'must expect some fencing in.'"  *Id.* (quoting *FTC v. Nat'l Lead Co.*, 352 U.S. 419, 431 (1957)).  *See also FTC v. J.K. Pubs., Inc.*, 99 F. Supp. 2d 1176, 1209 (C.D. Cal. 2000) ("fencing in" provisions are proper to prevent "similar and related violations from occurring in the future") (citations omitted).

In this case, the proposed default judgment contains fencing-in provisions restraining defendants from making false or unsubstantiated claims in connection with advertising, marketing, promotion, offering for sale, sale, or distribution of any product or service.  As explained above, the corporate defendants violated the FTC Act and the TSR in the course of the deliberate, nationwide promotion and sale of the LI service. They made deceptive claims that are highly transferable to other products in the financial services field.  It is quite possible that defendant corporations may be reinvigorated and used as vehicles for deceptive commercial activity in the future.  Therefore, general fencing-in relief restraining corporate defendants from making false or unsubstantiated claims during the course of any business is important to prevent consumer injury going forward.

The proposed default judgment also includes standard provisions designed to ensure compliance and enforceability, including provisions requiring the maintenance of records, allowing the Commission to monitor defendants' compliance, and requiring defendants to submit compliance reports to the Commission.  Such provisions are proper

to ensure compliance with the injunctive provisions discussed above.  *See, e.g.*, *FTC v. US Sales Corp.*, 785 F. Supp. 737, 753-54 (N.D. Ill. 1992) (stating that a "relatively complex case . . . may require a sustained period of monitoring by the F.T.C. to ensure adequate compliance").

The injunctive relief proposed by the FTC's proposed default judgment is reasonably related to defendants' unlawful practices, while still broad enough to prevent defendants from violating the FTC Act going forward.  In light of defendants' serious violations of the FTC Act and the TSR, discussed above, Plaintiff's proposed injunctive relief is necessary and proper.

### 2.  The Default Judgment against Corporate Defendants Should Include the Requested Monetary Relief.

In addition to the permanent injunction discussed in Section B.1. above, the proposed default judgment includes a monetary judgment of $18,468,058, which reflects the net income from the defendants' common enterprise and is appropriate in view of defendants' lucrative, deceptive promotion of the LI program.  In a Section 13(b) fraud action, the Court is empowered to exercise the full breadth of its equitable authority and may, therefore, impose such additional relief as is necessary to remedy any violations found.  *Gem Merch.,* 87 F.3d at 468-69; *FTC v. U.S. Oil & Gas Corp.,* 748 F.2d 1431, 1432 (11th Cir. 1984); *H.N Singer,* 668 F.2d at 1107, 1113-14. Such equitable remedies "includ[e] the power to order equitable monetary relief for redress through remedies such as restitution or disgorgement." *FTC v. Peoples Credit First,* LLC, No. 8:03-CV-2353-T, 2005 WL 3468588, at *7 (M.D. Fla. Dec. 18, 2005) (citing *Gem Merch.,* 87 F.3d at 468-

70); *see also Transnet Wireless,* 506 F. Supp. 2d at 1271 (citations omitted); *HN Singer,*

668 F.2d at 1112-13; *Amy Travel,* 875 F.2d at 571-72.

The appropriate amount of monetary relief in FTC cases is "determined by the

amount paid by the consumers in the illegal scheme less any amounts previously returned

to the consumers." *Peoples Credit First,* 2005 WL 3468588, at *7 n.18 (citing *Gem*

*Merch.,* 87 F.3d at 467); *see also FTC v. SlimAmerica, Inc.,* 77 F. Supp. 2d 1263, 1276

(S.D. Fla. 1999).  The FTC must show that its calculations "reasonably approximate[] the

amount of consumers' net losses . . ."  *FTC v. Febre,* 128 F.3d 530, 535 (7th Cir. 1997).

The proposed $18,468,058 judgment, based upon financial statements prepared by

or for defendants, is a reasonable approximation of the amount of consumers' net losses,

and directly reflects all known monies paid by consumers for the defendants' deceptive

LI service, less any known refunds.  LI defendants agree this represents the best

approximation of total consumer damages caused by the LI operation.  *See* Fisher Dep. at

85:1-10; 111:8-116:1 (Apr. 11, 2012) (authenticating a sample of one of the

spreadsheets); Permanent Injunction as to Dale Robinson (Dkt. #211) at 5 (monetary

judgment of $7,231,552 representing consumer damages from part of LI operation);

Permanent Injunction as to William Balsamo (Dkt. #209) at 6 (monetary judgment of

$11,236,506 representing consumer damages from remainder of LI operation).  The

$18,468,058 cited above therefore "reasonably approximates" consumers' net losses.  *See*

*also* Permanent Injunctions as to defendants Brett Fisher (Dkt. #212) and Andre Keith

Sanders (Dkt. #210).  No further hearing on damages is necessary.

Defendants MST and CCG operated as a common enterprise with the other LI defendants while engaging in the deceptive practices described above.  The LI defendants operated together seamlessly such that no real distinction existed between them, sharing phone numbers, websites, addresses, and marketing materials. TRO Memo at 34-36.  As a result, CCG and MST should be held jointly and severally liable for the full amount of consumer injury caused by the common enterprise's violations of the FTC Act and the TSR.  *See FTC v. Think Achievement Corp.,* 144 F. Supp. 2d 993, 1011 (N.D. Ind. 2000), *rev'd in part on other grounds,* 312 F.3d 259 (7th Cir. 2002); *see also Sunshine Art Studios, Inc. v. FTC,* 481 F.2d 1171, 1175 (1st Cir. 1973) (concluding that the FTC is empowered to issue a remedial order against all of the corporations because they "operate as a single economic entity''); *Del. Watch Co. v. FTC,* 332 F.2d 745, 746-47 (2d Cir. 1964) (finding that where one or more corporate entities operate as a common enterprise, "the pattern and frame-work of the whole enterprise must be taken into consideration" for liability purposes). Thus, the proposed order provides for joint and several liability for MST and CCG.

### C.  There Is No Just Reason to Delay Entry of Judgment Against Corporate Defendants MST and CCG Under Rule 54(b).

The FTC requests that the Court enter a final judgment against Defendants MST and CCG pursuant to Federal Rule of Civil Procedure 54(b) because there is no just reason for delay.  Fed. R. Civ. P. 54(b) ("when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all .... parties only if the court expressly determines that there is no just reason for delay'').

Defendants MST and CCG have remained unrepresented for over a year. Although the principal of the defendant corporations actively participated in this matter *pro se*, *see supra* Section I, defendants MST and CCG never hired counsel, answered any pleading, or moved to set aside the defaults entered against them.  There is no indication that defendants MST and CCG will ever appear in this matter.  In light of the Court's recent entry of stipulated judgments resolving the cases against all represented defendants to this action, there is no just reason for delaying entry of default judgment against MST and CCG.

## III.    CONCLUSION

For the foregoing reasons, the FTC respectfully requests that the Court enter the attached proposed default judgment and order against Defendants MST and CCG, jointly and severally, in the amount of $18,468,058.

Respectfully submitted,

Dated:  September 20, 2013        /s/ Julia Solomon Ensor
                                 KORIN EWING FELIX
                                 JULIA SOLOMON ENSOR
                                 Federal Trade Commission
                                 Division of Enforcement
                                 600 Pennsylvania Ave., NW, Suite M-8102B
                                 Washington, DC  20580
                                 (202) 326-3556, kfelix@ftc.gov (Felix)
                                 (202) 326-2377, jensor@ftc.gov (Ensor)
                                 (202) 326-2558 (Fax)

                                 Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, the plaintiff's Motion for Entry of Default Judgment and Order for Permanent Injunction and Other Equitable Relief as to Defendants My Success Track, LLC, and Consumer Credit Group, LLC, and the Attachments thereto were served by operation of the Court's electronic case filing ("ECF") system upon the following:

MARK BERNET, ESQ.
Akerman Senterfitt
401 E. Jackson Street, Suite 1700
Tampa, FL 33602
mark.bernet@akerman.com
*Receiver*

ANDREW B. LUSTIGMAN, ESQ.
Olshan Grundman Frome Rosenzweig & Wolosky LLP
Park Avenue Tower
65 East 55th Street
New York, NY 10022
alustigman@olshanlaw.com
*Attorney for Defendants Andre Keith Sanders; Sanders Law, P.A.; and Sanders Legal Group, P.A.*

KYLE CARRIER, ESQ.
P.O. Box 66465
St. Pete Beach, FL 33706
kcarrier24@gmail.com
*Attorney for Defendants Andre Keith Sanders; Sanders Law, P.A.; and Sanders Legal Group, P.A.*

ANDREW N. COVE, ESQ.
Cove & Associates, P.A.
225 South 21st Avenue
Hollywood, FL 33020
anc@covelaw.com
*Attorney for Defendants William Balsamo and First Financial Asset Services, Inc.*

I further certify that on this date, the plaintiff's Motion for Entry of Default Judgment and Order for Permanent Injunction and Other Equitable Relief as to Defendants My Success Track, LLC, and Consumer Credit Group, LLC, and the Attachments thereto were served via U.S. first class mail and/or email upon the following non-participants in the ECF system:

Dale Robinson
14830 56th Street North
Clearwater, FL 33760
drobinson50@live.com
*Defendant pro se*

Brett Fisher
111 Sunburst Court
Clearwater, FL 33755
brettfisher21@gmail.com
*Defendant pro se*

Dated:  September 20, 2013          _/s/ Julia Solomon Ensor__
                                    Julia Solomon Ensor
                                    Federal Trade Commission
                                    Division of Enforcement
                                    600 Pennsylvania Ave., NW, Suite M-8102B
                                    Washington, DC  20580
                                    (202) 326-2377, jensor@ftc.gov
                                    202) 326-2558 (Fax)