UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | |
| Plaintiff, | Case No. 8:12-cv-586-T35-MSS-EAJ |
| v. | |
| PRO CREDIT GROUP, LLC, *et al.*, | |
| Defendants. | |

MOTION FOR ENTRY OF DEFAULT JUDGMENT AND
ORDER FOR PERMANENT INJUNCTION AND OTHER
EQUITABLE RELIEF AS TO DEFENDANT PRO CREDIT GROUP, LLC

Plaintiff, Federal Trade Commission ("FTC" or "Commission"), respectfully

moves this Court, pursuant to Rule 55(b)(2) of the Federal Rules of Civil Procedure, to

enter the attached default judgment against corporate defendant Pro Credit Group, LLC

("PCG") (Attach. A).  The Clerk of this Court properly entered default against PCG on

December 18, 2012 (Dkt. #191), because PCG failed to obtain new counsel pursuant to

the Court's August 28, 2012 Order granting its then-counsel's motion to withdraw (Dkt.

#152).

Given defendant's default and the evidence on record of consumer harm resulting

from defendants' violations of the FTC Act and the Telemarketing Sales Rule ("TSR"),

plaintiff requests that this Court enter the attached proposed default judgment, which

contains a permanent injunction and other equitable relief.  The Court has entered

1

Stipulated Permanent Injunctions against all represented defendants and all unrepresented

individual defendants.  (Dkt. #209-212).  Only the unrepresented corporations remain,

and they cannot proceed *pro se* in this matter.  Thus, the requested default judgment –

along with the separately-requested default judgment against unrepresented corporate

defendants My Success Track, LLC ("MST") and Consumer Credit Group, LLC

("CCG") – is necessary to resolve the remaining claims in this action.

## I.      BACKGROUND

On March 19, 2012, the FTC filed a Complaint for Permanent Injunction and

Other Equitable Relief against PCG, along with several other corporations and

individuals,[1] detailing their violations of Section 5(a) of the Federal Trade Commission

Act ("FTC Act"), 15 U.S.C. § 45(a), and the FTC's Telemarketing Sales Rule ("TSR"),

16 C.F.R. Part 310 (1995) (as amended), in connection with the alleged deceptive

marketing of a service to lower consumers' credit card interest rates (the "LI service")

and in connection with the unfair collection of purported debts that consumers did not

owe to defendants or their co-participants ("Debt Collection Scheme").  Defendant PCG

was properly served with the Complaint in this action. [2]

---

[1] The other defendants to this action include:  (1) corporate defendants MST and CCG (against whom the Clerk entered a default on October 17, 2012 (Dkt. #159-160)), Sanders Legal Group, P.A., Sanders Law, P.A., and First Financial Asset Services, Inc.; and (2) individual defendants Brett Fisher, Andre Keith Sanders, Dale Robinson, and William Balsamo.

[2] On March 21, 2012, PCG was served with the summons, Complaint, TRO, and other original pleadings in this Action (Dkt. #36).

To sell the LI service, defendants Brett Fisher, Andre Keith Sanders, Dale Robinson, William Balsamo, PCG, MST, CCG, Sanders Law Group, P.A., and First Financial Asset Services, Inc. ("LI Defendants") ran or hired call centers that contacted consumers through outbound calling or robocalls, offering to reduce consumers' interest rates on all their credit cards and to save consumers thousands of dollars in interest charges.  Rather than negotiating lower interest rates for consumers, however, LI Defendants typically gave consumers a "budget plan" that illustrated the obvious:  they could pay off their credit cards early by incurring no new charges and making payments that exceeded the required monthly minimums.

In the Debt Collection Scheme, defendants Brett Fisher, Andre Keith Sanders, PCG, and Sanders Legal Group ("Debt Collection Defendants") opened merchant accounts and processed payments from consumers that they did not owe and were coerced into paying through lies, threats, and abusive phone calls from foreign call centers working with the Debt Collection Defendants.  Debt Collection Defendants also served as the customer service center for the Debt Collection Scheme, responding to complaints as well as challenging chargebacks against consumers' credit cards.

Upon filing this action, the FTC asked the Court to issue an *ex parte* Temporary Restraining Order ("TRO") to halt defendants' unfair and deceptive acts (Dkt. #10).  In connection with its Memorandum in support of the TRO ("TRO Memo") (Dkt. #10), the FTC introduced voluminous evidence against PCG and the other defendants who marketed the LI service and those who ran the Debt Collection Scheme.  This evidence

included twenty-eight consumer declarations[3]; a declaration from the West Florida Better

Business Bureau providing details regarding consumer complaints (FTC 33); a

declaration from a West Virginia Assistant Attorney General in the Office of the

Attorney General's Consumer Protection Division regarding consumer complaints about

the Debt Collection Scheme and Sanders Legal Group's response to a state subpoena

(FTC 35); a declaration from the Florida Department of Agriculture and Consumer

Services containing scripts and other evidence relating to the LI service (FTC 37); a

declaration from a U.S. Secret Service agent regarding the Debt Collection Scheme (FTC

38); and a declaration from an FTC investigator containing information about financial

records, undercover calls, and other evidence relating to both operations (FTC 39).  Upon

due consideration, on March 20, 2012, this Court found probable cause that the

defendants were violating the FTC Act and the TSR, and that there was good cause to

issue the TRO with an asset freeze on an *ex parte* basis because of the defendants'

ongoing violations.  (Dkt. #11-1).

On November 14, 2012, the Court entered the FTC's Amended Complaint, which,

based on newly-discovered evidence, elaborated on the counts in the Complaint, and

added an additional count addressing LI Defendants' use of a prohibited prerecorded

---

[3] Regarding the LI service:  FTC 6, Agreen; FTC 7, Blair; FTC 8, Browning; FTC 9, Carnes; FTC 10, Cielo; FTC 11, Crafton; FTC 12, Gertz; FTC 13, Halliday; FTC 14, Hendryx;  FTC 15, Ingram; FTC 16, Leftwich; FTC 17, Malerbi; FTC 18, Sarzynski; FTC 19, Sollmann; FTC 20, Stewart; FTC 21, Syster; FTC 22, Trimble; FTC 23, York; FTC 24, Zalewski; FTC 41, Ponikvar.  Regarding the Debt Collection Scheme:  FTC 25, Brunke; FTC 26, Davis; FTC 27, Lynch; FTC 28, Riddick; FTC 29, Schall; FTC 30, Smith; FTC 31, Tesh; FTC 32, Wallen.

message to market their products in violation of the TSR.[4]  On November 14, 2012, the

Amended Complaint was served via ECF upon the Court-appointed Receiver (Dkt.

#183), an agent "authorized by appointment or by law to receive service of process" for

PCG, Fed. R. Civ. P. 4(h)(1)(B), as well as upon Brett Fisher, the principal of PCG.

Thus, PCG was properly served with both the Complaint and the Amended Complaint.

The Amended Complaint charges that PCG violated Section 5 of the FTC Act and

Section 310.3(a)(2)(x) of the TSR by operating as a common enterprise with other LI

Defendants to deceptively market the LI service to consumers.  Specifically, LI

Defendants violated the FTC Act and the TSR by misrepresenting that:  (1) they were

affiliated, or had established relationships, with consumers' lenders; (2) they would

negotiate lower interest rates for consumers within a few months; (3) consumers would

save thousands of dollars as a result of their negotiations; (4) consumers would receive

assistance from personal financial consultants; and (5) consumers would receive full

refunds (Counts Two and Four, Am. Compl. ¶¶ 53-54; 67-68).  The Amended Complaint

further charges that PCG violated § 310.4(a)(5)(i) of the TSR by requesting and receiving

a prohibited advance payment in connection with the telemarketing of the LI service

(Count Three, Am. Compl. ¶¶ 65-66); and § 310.4(b)(1)(v) of the TSR by initiating, or

causing others to initiate, outbound telephone calls that deliver prerecorded messages to

induce the purchase of goods or services (Count Six, Am. Compl. ¶¶ 71-72).

---

[4] Although the Amended Complaint added a new count relating to defendants' TSR
violations, it did not request any additional relief beyond that requested in the original
Complaint.

On August 28, 2012, the Court permitted counsel for PCG to withdraw due to unpaid legal fees.  (Dkt. #152).  The Court further ordered PCG to obtain new counsel within twenty-one days or to face default judgment.  On December 18, 2012, after reviewing the docket and determining that no counsel for PCG had entered an appearance, the Clerk entered default against PCG.  (Dkt. #191); *see* Fed. R. Civ. P. 55(a).

## II.    ARGUMENT

Because unrepresented and defaulted corporate defendant PCG[5] has not retained new counsel since August 28, 2012, and there is no indication that it will obtain counsel or effectively participate in this action, the Court should enter a default judgment against PCG pursuant to Fed. R. Civ. P. 55(b)(2).  This Court has held that "[t]he effect of the entry of a default is that all of the factual allegations in the complaint are taken as true, save for the amount of unspecified damages."  *Enpat, Inc. v. Budnic*, 773 F. Supp. 2d 1311, 1313 (M.D. Fla. 2011) (citing *Buchanan v. Bowman*, 820 F.2d 359 (11th Cir. 1987)).  *See also Cotton v. Mass. Mut. Life Ins. Co.*, 402 F.3d 1267, 1278 (11th Cir. 2005) ("[A] defaulted defendant is deemed to admit the plaintiff's well-pleaded allegations of fact."); *Miller v. Paradise of Port Richey, Inc.*, 75 F. Supp. 2d 1342, 1346 (M.D. Fla. 1999) (same).

---

[5] It is well-established that "a corporation may appear in the federal courts only through licensed counsel."  *Rowland v. Calif. Men's Colony*, 506 U.S. 194, 201-02 (1993); *see also* M.D. Fla. Local Rule 2.03(e); *Palazzo v. Gulf Oil Corp.*, 764 F.2d 1381, 1385 (11th Cir. 1985).

6

The Clerk entered default against corporate defendant PCG on December 18, 2012 (Dkt. #191).  Taking the factual allegations contained in the Commission's Amended Complaint as true, plaintiff has alleged sufficient facts to constitute a cause of action under Section 5 of the FTC Act and the TSR.  Defendant PCG has not retained new counsel as ordered by the Court; therefore plaintiff is entitled to default judgment.

### A.  A Default Judgment Should Be Entered because Defendant Is Deemed to Admit the Complaint's Allegations and Damages are Ascertainable.

The entry of default against PCG and the evidence of record establish that it has violated the FTC Act and the TSR as described in the FTC's filings.  Default judgment is therefore a proper resolution of the case against this defendant.  Indeed, the FTC has provided this Court with thorough, uncontroverted support for its allegations against PCG.  *See* Plaintiff's TRO Memo (Dkt. #10-1), submitted Mar. 19, 2012, and accompanying exhibits; *see also* Plaintiff's Supplemental Brief Providing Newly-Discovered Evidence in Support of Its Motion for Preliminary Injunction (Dkt. #98), submitted Apr. 16, 2012; *and* FTC 43-FTC 74 (Dkt. # 122), submitted Apr. 30, 2012 (exhibits filed with the Court in support of the FTC's Motion for Preliminary Injunction).

### 1.  PCG's LI Service is Deceptive in Violation of the FTC Act and the TSR.

Section 5 of the FTC Act prohibits "unfair or deceptive acts or practices in or affecting commerce[.]"  15 U.S.C. § 45(a).  An act or practice is deceptive under Section 5 if:  "(1) there was a representation; (2) the representation was likely to mislead consumers acting reasonably under the circumstances; and (3) the representation was material."  *FTC v. Transnet Wireless,* 506 F. Supp. 2d 1247, 1266-67 (S.D. Fla. 2007)

(citing *FTC v. Tashman,* 318 F.3d 1273, 1277 (11th Cir. 2003)).  "A representation is

material if it is of a kind usually relied upon by a reasonably prudent person." *Id.*  (citing

*FTC v. Jordan Ashley, Inc.,* 1994-1 Trade Cas. (CCH) P 70570 at 72,096 (S.D. Fla.

1994)); *FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 573 (7th Cir. 1989).  "A

presumption of actual reliance arises once the FTC has proved that the defendants made

material misrepresentations, that they were widely disseminated, and that consumers

purchased the defendants' product."  *Transnet Wireless,* 506 F. Supp. 2d. at 1266-67

(quoting *FTC v. Figgie Int'l, Inc.,* 994 F.2d 595, 605 (9th Cir. 1993), *cert. denied,* 510

U.S. 1110 (1994)).  "Express claims, or deliberately made implied claims, used to induce

the purchase of a particular product or service are presumed to be material."  *Id.*, 506 F.

Supp. 2d at 1266-67.

> a. <u>PCG is part of a common enterprise to market the deceptive LI Service.</u>

Defendants PCG, Sanders Law, P.A., MST, CCG, and First Financial have

operated as a common enterprise while engaging in the LI service.  Defendants operated

through an interrelated network of companies that shared business functions, office

locations, phone numbers, and advertising and held themselves out to consumers as the

same company.  Am. Compl. ¶17.  Defendants Fisher, Sanders, Robinson, and Balsamo

formulated, directed, controlled, had the authority to control, or participated in the acts

and practices of PCG, Sanders Law, MST, CCG, and First Financial that constitute the

common enterprise.  *Id.*

b. <u>LI Defendants made material misrepresentations in violation of the FTC Act and the TSR.</u>

LI Defendants, including PCG, made material misrepresentations to consumers that:  (1) LI Defendants were affiliated, or had established relationships, with consumers' lenders; (2) LI Defendants would negotiate lower interest rates for consumers within a few months; (3) consumers would save thousands of dollars as a result of LI Defendants' negotiations; (4) consumers would receive assistance from personal financial consultants; and (5) consumers would receive full refunds.  They made these representations to consumers in numerous instances, and consumers purchased LI Defendants' service after hearing these representations.  *See, e.g.,* Consumer decls. submitted in conjunction with TRO Memo.  In fact, LI Defendants had no affiliation or relationship with consumers' lenders, *see* Zuzek Dep. at 76:18-77:16 (Attach. B).  Furthermore, LI Defendants made only cursory efforts to negotiate lower rates and likely failed to obtain any interest rate reduction for at least 50% of their customers, *see* Yoeli Expert Report at 11:9-15 (Attach. C, exhibits omitted), let alone significant savings as a result of interest rate reduction.  *See also* TRO Memo at 11-12 (Dkt. #10).  Additionally, consumers did not receive assistance from personal financial consultants, *see* York Decl., FTC 23; and, although a no-questions-asked refund policy was central to defendants' initial pitch, LI Defendants made it as difficult as possible for consumers to obtain refunds, rarely granted full refunds, and often only did so after consumers filed BBB complaints.  *See* TRO Memo at 12-15 (Dkt. #10).

LI Defendants also violated the TSR when they:  (1) offered the LI program to consumers in exchange for payment of advance fees; (2) made the above-described

misrepresentations; and (3) marketed their services nationwide through prohibited

prerecorded messages or "robocalls."  *See* Count Three, Am. Compl. ¶¶ 65-66; Count

Four, Am. Compl. ¶¶ 67-68; and Count Six, Am. Compl. ¶¶ 71-72.

LI Defendants are "seller[s]" or "telemarketer[s]" engaged in "telemarketing," as

those terms are defined in the TSR, 16 C.F.R. § 310.2(aa), (cc), and (dd).  The TSR

prohibits, among other things:  (1) requesting or receiving payment of any fee for any

debt relief service until and unless the telemarketer has renegotiated or otherwise altered

the terms of at least one debt pursuant to a valid contractual agreement and the customer

has made at least one payment pursuant to that agreement, 16 C.F.R. § 310.4(a)(5)(i); (2)

misrepresenting, while engaged in telemarketing, material aspects of any debt relief

service, including the amount of money that a customer may save by using such service,

16 C.F.R. § 310.3(a)(2)(x); and (3) initiating an outbound telephone call that delivers a

prerecorded message to induce the purchase of a good or service unless the seller has

obtained from the recipient of the call an express agreement, in writing, agreeing to

receive calls that deliver prerecorded messages by or on behalf of a specific seller, 16

C.F.R. § 310.4(b)(1)(v)(A) and (B).

As a member of the LI common enterprise, PCG is jointly and severally liable for

these violations of the FTC Act and the TSR.

### 2.  PCG's Debt Collection is an Unfair Practice in Violation of the FTC Act.

An act or practice is unfair under the FTC Act if it causes or is likely to cause

substantial injury to consumers that is not reasonably avoidable by consumers and is not

outweighed by countervailing benefits to consumers or competition.  15 U.S.C. § 45(n).

PCG, along with Defendants Fisher, Sanders, and Sanders Legal Group, engaged in an unfair practice by processing payments from consumers that consumers did not owe and that consumers were coerced into paying through lies, threats, and abusive phone calls from foreign call centers working with these defendants.

Specifically, callers based overseas contacted consumers and told them that they were delinquent on payday loans or other debts. Am. Compl. ¶ 19. These callers often claimed that they were law enforcement officers or lawyers or otherwise affiliated with law enforcement authorities. *Id.* ¶ 20. Callers threatened consumers with arrest or legal action if they failed to pay immediately and, in numerous instances, possessed consumers' personal information – such as Social Security Numbers or addresses – and used that information to convince consumers that they were legitimate debt collectors. *Id.* ¶¶ 21-22. Consumers paid the purported debts as instructed because they were afraid of the threatened repercussions. *Id.* ¶ 23.

Working with the other Debt Collection Defendants, PCG processed consumers' payments through merchant accounts they controlled under the name Sanders Legal Group. *Id.* ¶ 24. PCG and the Debt Collection Defendants also mailed receipts to consumers reflecting their payments, *id.*; they processed millions of dollars in bogus charges for these overseas callers, *id.* ¶ 26. PCG also fielded complaints from consumers and from the Better Business Bureau of Clearwater, Florida, about the callers' abusive practices and about the fact that consumers did not owe the money the callers sought. *Id.* ¶¶ 27-28. In August 2010, Debt Collection Defendants were contacted by a U.S. Secret

Service agent conducting a criminal investigation stemming from consumer complaints spawned by the acts described above.  *Id.* ¶ 29.

Despite knowledge of consumer complaints and the criminal investigation, PCG and the Debt Collection Defendants continued processing payments for the overseas callers without contracts or proof of the right to collect the debts.  *Id.* ¶ 30.  PCG and the Debt Collection Defendants processed such payments from January 2010 until at least August 2011.  *Id.* ¶ 18.

Although the Court need not look beyond the allegations of the Amended Complaint, the evidence the FTC has submitted to the Court confirms PCG's liability. This evidence includes consumer and investigator declarations, corporate documents, and marketing materials submitted as part of plaintiff's TRO Memo, along with the voluminous complaints and other documents submitted to the Court in advance of the preliminary injunction hearing.  As a result, default judgment is appropriate in this case.[6]

**B.    The Court Should Enter the Attached Default Judgment against PCG, Including a Permanent Injunction and a Monetary Judgment of $25,283,238.00.**

This Court has broad authority to issue equitable relief, and entry of the attached default judgment (Attach. A) containing a permanent injunction and provisions for financial redress is appropriate to prevent and remedy consumer injury caused by PCG in this case.

_____

[6] While the Eleventh Circuit's preference is to dispose of cases on the merits, *see Wahl v. Melver*, 773 F.2d 1169, 1174 (11th Cir. 1985), the FTC has presented voluminous evidence of PCG's liability, and PCG has failed to obtain new counsel, despite the Court's specific order to do so.  Moreover, PCG's principal and the Receiver have given no indication that they will retain qualified counsel to represent PCG, making default judgment the best means of resolving the case.

### 1. The Default Judgment against PCG Should Include the Requested Injunctive Relief.

The Court should enter a default judgment against PCG that contains broad injunctive relief.  Section 13(b) of the FTC Act, 15 U.S.C. § 53(b), provides that "in proper cases the Commission may seek, and after proper proof, the court may issue, a permanent injunction."  Pursuant to Section 13(b), the FTC may seek a permanent injunction against violations of "any provision of law enforced by the Federal Trade Commission."  15 U.S.C. § 53(b).  *See, e.g., FTC v. Gem Merch. Corp.*, 87 F.3d 466, 468 (11th Cir. 1996); *see also FTC v. Amy Travel Serv., Inc.*, 875 F.2d 564, 571-72 (7th Cir. 1989); *FTC v. Transnet Wireless*, 506 F. Supp. 2d 1247, 1271 (S.D. Fla. 2007) (stating that Section 13(b) provides the Court with "the authority to exercise its full equitable powers . . . to remedy violations of Section 5 of the Act.").  This case, which involves violations of Section 5(a) of the FTC Act in connection with the Debt Collection Scheme and violations of Section 5(a) and the TSR in connection with the sale of a deceptive interest rate reduction service, qualifies as a "proper case" for injunctive relief under Section 13(b).  *FTC v. H.N. Singer, Inc.*, 668 F.2d 1107, 1111 (9th Cir. 1982) (holding that a "routine fraud case" is a "proper case" for permanent injunctive relief under 13(b)).

Section 13(b) of the FTC Act expressly authorizes the issuance of a permanent injunction to prevent further violations.  15 U.S.C. § 53(b); *Gem Merch.,* 87 F.3d at 468.  A permanent injunction is justified when there is a "cognizable danger of recurrent violation" that goes beyond a "mere possibility."  *U.S. v. W.T. Grant Co.,* 345 U.S. 629, 633 (1953).  Prior illegal conduct is highly suggestive of the likelihood of future violations.  *SEC v. Murphy,* 626 F.2d 633, 655 (9th Cir. 1980) ("The existence of past

violations may give rise to an inference that there will be future violations."); *see also SEC v. Am. Bd. of Trade,* 751 F.2d 529, 537-38 (2d Cir. 1984); *SEC v. Mgmt. Dynamics, Inc.,* 515 F.2d 801, 807 (2d Cir. 1975).  Here, PCG's violations of Section 5(a) of the FTC Act and the TSR create a "cognizable danger" that it will continue to violate the law.  *W.T. Grant Co.,* 345 U.S. at 633.  Therefore, a permanent injunction against PCG is appropriate and necessary to protect the public from further violations of the FTC Act.

The FTC's proposed Default Judgment and Order for Permanent Injunction and Other Equitable Relief includes conduct prohibitions in the form of three permanent bans that are reasonably related to PCG's unlawful practices, as well as fencing-in relief to protect consumers from similar misconduct in the future.  Moreover, this injunctive relief is identical to that imposed on Defendant Brett Fisher, the principal of PCG, pursuant to his Stipulated Permanent Injunction.

Sections I and II of the FTC's proposed Default Judgment contain bans on telemarketing and financial-related goods or services.  Section III contains a ban on debt collection.  Courts have ordered broad bans on otherwise legitimate behavior based on the past conduct of defendants as a means of preventing future law violations in numerous FTC cases.  *See, e.g., FTC v. RCA Credit Servs., LLC,* No. 8:08-cv-2062-T-27MAP, 2010 U.S. Dist. LEXIS 143755, at *4-5 (M.D. Fla. Oct. 15, 2010) (ban on marketing any credit repair product or service); *FTC v. Neiswonge*r, 494 F. Supp. 2d 1067, 1083-84 (E.D. Mo. 2007), *aff'd*, 580 F.3d 769 (8th Cir. 2009) (imposing permanent bans); *FTC v. Gill*, 265 F.3d 944, 957-58 (9th Cir. 2001) (ban on participation in credit repair business); *McGregor v. Chierico*, 206 F.3d 1378, 1386 n.9 (11th Cir. 2000)

(affirming ban on telemarketing in FTC case); *FTC v. Five-Star Auto Club, Inc.,* 97 F. Supp. 2d 502, 536 (S.D.N.Y. 2000) (ban on all multi-level marketing); *FTC v. Jordan Ashley, Inc*., No. 93- 2257, 1994 WL 200775, at *5 (S.D. Fla. Apr. 5, 1994) (imposing permanent ban).

PCG relied almost exclusively upon telemarketing to deceive consumers into purchasing a deceptive debt relief service and has shown that it will not engage in the business of telemarketing lawfully.  Therefore, the FTC proposes a default judgment containing permanent bans on telemarketing and financial-related goods or services to prevent highly-foreseeable future consumer injury.  These permanent bans bear a "reasonable relation" to the violations that they are intended to remedy.  *Telebrands Corp. v. FTC*, 457 F.3d 354, 358 (4th Cir. 2006).

PCG also engaged in debt collection and assisted others engaged in debt collection, even though the purported debts were not real and the callers used lies, threats, and intimidation to force consumers to pay.  Despite receiving numerous complaints about the abusive practices and an inquiry from the U.S. Secret Service, PCG continued to work with the overseas debt collectors for months, collecting more than $5 million in fraudulent debts.  PCG has demonstrated that it will not engage in debt collection lawfully.  Hence, the FTC proposes a Default Judgment containing a permanent ban on debt collection.

The Court's broad power to grant injunctive and other equitable relief also includes the authority to enter injunctive "fencing in" relief to prevent future violations of the FTC Act.  *See FTC v. Colgate-Palmolive Co*., 380 U.S. 374, 395 (1965).  "The

Commission is not limited to prohibiting the illegal practice in the precise form in which it is found to have existed in the past." *Id.* (quoting *FTC v. Ruberoid Co.*, 343 U.S. 470, 473 (1952)).  "Having been caught violating the Act, respondents 'must expect some fencing in.'" *Id.* (quoting *FTC v. Nat'l Lead Co.*, 352 U.S. 419, 431 (1957)).  *See also FTC v. J.K. Pubs., Inc.*, 99 F. Supp. 2d 1176, 1209 (C.D. Cal. 2000) ("fencing in" provisions are proper to prevent "similar and related violations from occurring in the future") (citations omitted).

In this case, the proposed default judgment contains fencing-in provisions restraining PCG from making false or unsubstantiated claims in connection with advertising, marketing, promotion, offering for sale, sale, or distribution of any product or service.  As explained above, PCG violated the FTC Act by participating in the Debt Collection Scheme and both the FTC Act and the TSR in the course of the deliberate, nationwide promotion and sale of the LI service.  PCG made deceptive claims that are highly transferable to other products in the financial services field.  It is quite possible that PCG may be reinvigorated and used as a vehicle for deceptive commercial activity in the future.  Therefore, general fencing-in relief restraining PCG from making false or unsubstantiated claims during the course of any business is important to prevent consumer injury going forward.

The proposed default judgment also includes standard provisions designed to ensure compliance and enforceability, including provisions requiring the maintenance of records, allowing the Commission to monitor defendants' compliance, and requiring defendants to submit compliance reports to the Commission.  Such provisions are proper

to ensure compliance with the injunctive provisions discussed above.  *See, e.g.*, *FTC v. US Sales Corp.*, 785 F. Supp. 737, 753-54 (N.D. Ill. 1992) (stating that a "relatively complex case . . . may require a sustained period of monitoring by the F.T.C. to ensure adequate compliance").

The injunctive relief proposed by the FTC's proposed default judgment is reasonably related to PCG's unlawful practices, while still broad enough to prevent defendant from violating the FTC Act going forward.  In light of PCG's serious violations of the FTC Act and the TSR, discussed above, plaintiff's proposed injunctive relief is necessary and proper.

### 2.  The Default Judgment against PCG Should Include the Requested Monetary Relief.

In addition to the permanent injunction discussed in Section B.1. above, the proposed default judgment includes a monetary judgment of $25,283,238, which reflects the net income from the defendants' LI and Debt Collection Schemes and is appropriate in view of defendants' lucrative, deceptive promotion of the LI program and their Debt Collection Scheme.  In a Section 13(b) fraud action, the Court is empowered to exercise the full breadth of its equitable authority and may, therefore, impose such additional relief as is necessary to remedy any violations found. *Gem Merch.,* 87 F.3d at 468-69; *FTC v. U.S. Oil & Gas Corp.,* 748 F.2d 1431, 1432 (11th Cir. 1984); *H.N Singer,* 668 F.2d at 1107, 1113-14. Such equitable remedies "includ[e] the power to order equitable monetary relief for redress through remedies such as restitution or disgorgement." *FTC v. Peoples Credit First,* LLC, No. 8:03-CV-2353-T, 2005 WL 3468588, at *7 (M.D. Fla. Dec. 18, 2005) (citing *Gem Merch.,* 87 F.3d at 468-70); *see also Transnet Wireless,* 506

F. Supp. 2d at 1271 (citations omitted); *HN Singer,* 668 F.2d at 1112-13; *Amy Travel,* 875 F.2d at 571-72.

The appropriate amount of monetary relief in FTC cases is "determined by the amount paid by the consumers in the illegal scheme less any amounts previously returned to the consumers." *Peoples Credit First,* 2005 WL 3468588, at *7 n.18 (citing *Gem Merch.,* 87 F.3d at 467); *see also FTC v. SlimAmerica, Inc.,* 77 F. Supp. 2d 1263, 1276 (S.D. Fla. 1999). The FTC must show that its calculations "reasonably approximate[] the amount of consumers' net losses . . ." *FTC v. Febre,* 128 F.3d 530, 535 (7th Cir. 1997).

The proposed $25,283,238 judgment, based upon financial statements prepared by or for defendants, is a reasonable approximation of the amount of consumers' net losses, and directly reflects all known monies paid by consumers for the defendants' deceptive LI service and Debt Collection Scheme, less any known refunds. Defendants agree this represents the best approximation of total consumer damages caused by the LI operation and the Debt Collection Scheme. *See* Fisher PI Dep. at 85:1-10; 111:8-116:1 (Apr. 11, 2012) (authenticating a sample of one of the LI spreadsheets); Permanent Injunction as to Dale Robinson (Dkt. #211) at 5 (monetary judgment of $7,231,552 representing consumer damages from part of LI operation); Permanent Injunction as to William Balsamo (Dkt. #209) at 6 (monetary judgment of $11,236,506 representing consumer damages from remainder of LI operation); Fisher Dep. at 9:21-18:17, 22:6-25, 28:9-30:12, 37:6-88:9 (March 15, 2012) (Attach. D, exhibits omitted) (authenticating spreadsheets created by PCG to track gross and net income from Debt Collection Scheme); Permanent Injunction as to Brett Fisher (Dkt. #212) at 6 (monetary judgment of

$25,283,238 representing consumer damages from LI operation and Debt Collection Scheme). The $25,283,238 cited above therefore "reasonably approximates" consumers' net losses. No further hearing on damages is necessary.

Defendant PCG played an integral and important part of both the LI service common enterprise and the Debt Collection Scheme while engaging in the deceptive practices described above. No real distinction existed between PCG and the other LI Defendants; they shared phone numbers, websites, addresses, and marketing materials. TRO Memo at 34-36. PCG, under the direction of defendant Brett Fisher, played the central role in managing both the LI service and the Debt Collection Scheme. As a result, PCG should be held jointly and severally liable for the full amount of consumer injury caused by violations of the FTC Act and the TSR. *See FTC v. Think Achievement Corp.,* 144 F. Supp. 2d 993, 1011 (N.D. Ind. 2000), *rev'd in part on other grounds,* 312 F.3d 259 (7th Cir. 2002); *see also Sunshine Art Studios, Inc. v. FTC,* 481 F.2d 1171, 1175 (1st Cir. 1973) (concluding that the FTC is empowered to issue a remedial order against all of the corporations because they "operate as a single economic entity''). Thus, the proposed order provides for joint and several liability for PCG.

### C.   There Is No Just Reason to Delay Entry of Judgment Against Corporate Defendant PCG Under Rule 54(b).

The FTC requests that the Court enter a final judgment against Defendant PCG pursuant to Federal Rule of Civil Procedure 54(b) because there is no just reason for delay. Fed. R. Civ. P. 54(b) ("when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all .... parties only if the court expressly determines that there is no just reason for delay'').

Defendant PCG has remained unrepresented for over a year.  Although the principal of PCG actively participated in this matter *pro se*, *see supra* Section I, PCG failed to retain counsel after the Law Office of Robert Eckard & Associates, P.A., withdrew and never moved to set aside the default entered against it.  There is no indication that PCG will be represented in this matter.  In light of the Court's recent entry of stipulated judgments resolving the cases against all represented defendants to this action, there is no just reason for delaying entry of default judgment against PCG.

## III.    CONCLUSION

For the foregoing reasons, the FTC respectfully requests that the Court enter the attached proposed default judgment and order against Defendant PCG, jointly and severally, in the amount of $25,283,238.

Respectfully submitted,

Dated:  September 20, 2013         /s/    Korin Ewing Felix

KORIN EWING FELIX
JULIA SOLOMON ENSOR
Federal Trade Commission
Division of Enforcement
600 Pennsylvania Ave., NW, Suite M-8102B
Washington, DC  20580
(202) 326-3556, kfelix@ftc.gov (Felix)
(202) 326-2377, jensor@ftc.gov (Ensor)
(202) 326-2558 (Fax)

Attorneys for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, the plaintiff's Motion for Entry of Default Judgment and Order for Permanent Injunction and Other Equitable Relief as to Defendant Pro Credit Group, LLC, and the Attachments thereto were served by operation of the Court's electronic case filing ("ECF") system upon the following:

MARK BERNET, ESQ.
Akerman Senterfitt
401 E. Jackson Street, Suite 1700
Tampa, FL 33602
mark.bernet@akerman.com
*Receiver*

ANDREW B. LUSTIGMAN, ESQ.
Olshan Grundman Frome Rosenzweig & Wolosky LLP
Park Avenue Tower
65 East 55th Street
New York, NY 10022
alustigman@olshanlaw.com
*Attorney for Defendants Andre Keith Sanders; Sanders Law, P.A.; and Sanders Legal Group, P.A.*

KYLE CARRIER, ESQ.
P.O. Box 66465
St. Pete Beach, FL 33706
kcarrier24@gmail.com
*Attorney for Defendants Andre Keith Sanders; Sanders Law, P.A.; and Sanders Legal Group, P.A.*

ANDREW N. COVE, ESQ.
Cove & Associates, P.A.
225 South 21st Avenue
Hollywood, FL 33020
anc@covelaw.com
*Attorney for Defendants William Balsamo and First Financial Asset Services, Inc.*

I further certify that on this date, the plaintiff's Motion for Entry of Default Judgment and Order for Permanent Injunction and Other Equitable Relief as to Defendant Pro Credit Group, LLC, and the Attachments thereto were served via U.S. first class mail and/or email upon the following non-participants in the ECF system:

Dale Robinson
14830 56th Street North
Clearwater, FL 33760
drobinson50@live.com
*Defendant pro se*

Brett Fisher
111 Sunburst Court
Clearwater, FL 33755
brettfisher21@gmail.com
*Defendant pro se*


Dated:  September 20, 2013          _/s/ Korin Ewing Felix__
                                    Korin Ewing Felix
                                    Federal Trade Commission
                                    Division of Enforcement
                                    600 Pennsylvania Ave., NW, Suite M-8102B
                                    Washington, DC  20580
                                    (202) 326-3556, kfelix@ftc.gov
                                    202) 326-2558 (Fax)