**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

FEDERAL TRADE COMMISSION,

     Plaintiff,

v.                                                                          Case No: 8:12-cv-586-T-35EAJ

PRO CREDIT GROUP, LLC, a Florida
limited liability company, BRETT FISHER,
individually and as an officer, owner,
director, member, or manager of Pro Credit
Group, LLC, SANDERS LEGAL GROUP,
P.A., a Florida corporation, SANDERS
LAW, P.A., a Florida corporation, ANDRE
KEITH SANDERS, individually and as an
officer, owner, director, member, or
manager of Sanders Legal Group, P.A.,
and My Success Track, LLC, MY
SUCCESS TRACK, LLC, a Florida limited
liability company, CONSUMER CREDIT
GROUP, LLC, a Florida limited liability
company, DALE ROBINSON, individually,
and as an officer, owner, director, member,
or manager of member of Consumer Credit
Group, LLC, FIRST FINANCIAL ASSET
SERVICES, INC., a Florida corporation and
WILLIAM BALSAMO, individually and as an
officer, owner, director, member, or
manager of Consumer Credit Group, LLC,

     Defendants.

_____

**ORDER OF FINAL DEFAULT JUDGMENT, PERMANENT INJUNCTION AND
OTHER EQUITABLE RELIEF AS TO DEFENDANTS MY SUCCESS TRACK,
<u>LLC AND CONSUMER CREDIT GROUP, LLC</u>**

**THIS CAUSE** comes before the Court for consideration of Plaintiff's Motion for Entry of Default Judgment and Order for Permanent Injunction and Other Equitable Relief as to Defendants My Success Track, LLC and Consumer Credit Group, LLC.  (Dkt.  213)  Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court hereby **GRANTS** Plaintiff's motion.

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed its Complaint on March 19, 2012 for a permanent injunction and other equitable relief in this matter, pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § 6101 *et seq.*  The Court granted leave to file and entered an Amended Complaint on November 14, 2012.  (Dkt. 183)  The FTC alleged that Defendants My Success Track, LLC ("MST") and Consumer Credit Group, LLC ("CCG") (collectively, "Defendants"), along with several other corporations and individuals, violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310 (1995) (as amended), in connection with the alleged deceptive marketing of a service to lower consumers' credit card interest rates (the "LI service").

Defendants were properly served with the Complaint, (Dkt. 41; Dkt. 83), but failed to Answer or otherwise respond to it.  The Amended Complaint was served via ECF upon the Court-appointed Receiver for MST and CCG (Dkt. 183),

again without any response.   Moreover, a principal of both companies, Dale Robinson, has actively engaged in this litigation in his individual capacity *pro se*, and had notice of the claims pending against MST and CCG; yet, he declined to cause either defendant to retain counsel or otherwise defend itself herein.   On October 17, 2012, after reviewing the docket and determining that the corporate defendants had not responded to Plaintiff's complaint, the Clerk entered defaults against MST and CCG.  (Dkt. 159; Dkt. 160).   On September 20, 2013, the FTC filed this motion.   As of the date of this Order, Defendants have not retained counsel and have not answered Plaintiff's complaint.   Further, no response to this motion has been filed and the time for doing so has elapsed.   The Court, having considered the FTC's Motion and evidence, finds that an order granting default judgment against MST and CCG is appropriate.

Corporations cannot represent themselves *pro se* and neither principals of corporations nor their registered agents, who are not lawyers, can represent the interests of a corporation in a court of law.   See M.D. Fla. Local Rule 2.03(e); Palazzo v. Gulf Oil Corp., 764 F.2d 1381, 1385 (11th Cir. 1985)).   "Entry of a default judgment is a proper sanction for a defendant corporation's failure to obtain counsel."   See eComSystems, Inc. v. Shared Marketing Services, Inc., 8:10-CV-1531-T-33MAP, 2012 WL 1094317, at *2 (M.D. Fla. April 2, 2012). Further, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default."

Fed. R. Civ. P. 55(a).  However, a defendant's default alone does not require the court to enter a default judgment.  <u>DIRECTV, Inc. v. Trawick</u>, 359 F. Supp. 2d 1204, 1206 (M.D. Ala. 2005).  To enter a judgment, there must be a sufficient basis in the pleadings to support the entry of judgment.  <u>Id</u>.  "The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.  In short, . . . a default is not treated as an absolute confession of the defendant of his liability and of the plaintiff's right to recover."  <u>Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank</u>, 515 F.2d 1200, 1206 (5th Cir. 1975).[1]

Section 5 of the FTC Act prohibits "unfair or deceptive acts or practices in or affecting commerce[.]"  15 U.S.C. § 45(a).  An act or practice is deceptive under Section 5 if: "(1) there was a representation; (2) the representation was likely to mislead consumers acting reasonably under the circumstances; and (3) the representation was material."  <u>FTC v. Transnet Wireless</u>, 506 F. Supp. 2d 1247, 1266-67 (S.D. Fla. 2007) (citing <u>FTC v. Tashman</u>, 318 F.3d 1273, 1277 (11th Cir. 2003)).  "A representation is material if it is of a kind usually relied upon by a reasonably prudent person."  <u>Id</u>. (citing <u>FTC v. Jordan Ashley, Inc.</u>, 1994-1 Trade Cas. (CCH) P 70570 at 72,096 (S.D. Fla. 1994)); <u>FTC v. Amy Travel Serv., Inc.</u>, 875 F.2d 564, 573 (7th Cir. 1989).  "A presumption of actual reliance arises once the FTC has proved that the defendants made material misrepresentations, that they were widely disseminated, and that consumers purchased the defendants' product."  <u>Transnet Wireless</u>, 506 F. Supp. 2d at 1266-67 (quoting

---

[1] Decisions of the Fifth Circuit entered prior to October 1, 1981, are binding on the Eleventh Circuit. <u>Bonner v. City of Richard</u>, 661 F.2d 1206, 1209 (11th Cir. 1981).

FTC v. Figgie Int'l, Inc., 994 F.2d 595, 605 (9th Cir. 1993)).  "Express claims, or deliberately made implied claims, used to induce the purchase of a particular product or service are presumed to be material."  Id.

The TSR prohibits, among other things: (1) requesting or receiving payment of any fee for any debt relief service until and unless the telemarketer has renegotiated or otherwise altered the terms of at least one debt pursuant to a valid contractual agreement and the customer has made at least one payment pursuant to that agreement, 16 C.F.R. § 310.4(a)(5)(i); (2) misrepresenting, while engaged in telemarketing, material aspects of any debt relief service, including the amount of money that a customer may save by using such service, 16 C.F.R. § 310.3(a)(2)(x); and (3) initiating an outbound telephone call that delivers a prerecorded message to induce the purchase of a good or service unless the seller has obtained from the recipient of the call an express agreement, in writing, agreeing to receive calls that deliver prerecorded messages by or on behalf of a specific seller, 16 C.F.R. § 310.4(b)(1)(v)(A) and (B).

The Court, having considered the Amended Complaint, the FTC's Motion and evidence, and the other matters in record, finds and Orders as follows.

## Findings

1. This Court has jurisdiction over the subject matter and the parties.

2. Venue is proper in the Middle District of Florida.

3.  The activities of Defendants MST and CCG are in or affecting commerce, as defined in the FTC Act, 15 U.S.C. § 44.

4.  The Amended Complaint charges that Defendants participated in deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, and abusive or deceptive telemarketing acts or practices in violation of the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, in connection with the marketing or sale of a service purporting to lower the interest rates on consumers' debts.

5.  The FTC has the authority under Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57(b), to seek the relief it has requested.

6.  Defendants CCG and MST were properly served with the Summons and Complaint on March 21, 2012 (CCG) and April 2, 2012 (MST).  Defendants CCG and MST were properly served with the Amended Complaint on November 14, 2012.

7.  Defendants CCG and MST have, at no point during this action, been represented by counsel.

8.  Defendants CCG and MST did not file any responsive pleading to the FTC's Complaint at any point during the course of this litigation.

9.  A Clerk's Default was entered against Defendants CCG and MST on October 17, 2012.

10. The factual allegations in the Commission's Amended Complaint are taken as true as against defendants CCG and MST.

11. As alleged in the Amended Complaint, defendants CCG and MST, participated in a common enterprise to market or sell a service purporting to lower the interest rates on consumers' debts ("Interest Rate Reduction Scheme"). In addition to promising lower interest rates, as part of the Interest Rate Reduction Scheme, Defendants misrepresented to consumers that they had relationships with consumers' lenders, they would negotiate lower interest rates within a few months, consumers would save thousands of dollars as a result of these negotiations, consumers were to receive assistance from personal financial consultants, and consumers would receive full refunds upon request.

12. As alleged in the Amended Complaint, the Defendants had no previous relationships with consumers' lenders and made no more than cursory efforts to lower consumers' interest rates.  Instead, the Defendants offered consumers a budget plan stating the obvious; namely, that consumers could pay off their credit cards early by incurring no new charges and making payments that exceeded the required monthly minimums.  Consumers did not save thousands of dollars as a result of the Interest Rate Reduction Defendants' negotiations but spent hundreds of dollars on a service that provided little or no benefit.  Further, the Interest Rate Reduction Defendants failed to provide consumers with the promised personalized financial consultants and, despite a

purported no-questions-asked refund policy, made it as difficult as possible for consumers to obtain refunds.

13. Defendants CCG and MST directly participated in the deceptive acts and practices of this Interest Rate Reduction Scheme.

14. As a result of the deceptive acts and practices set forth above in the Interest Rate Reduction Scheme, consumers have incurred injury of at least $18,468,058. Verified financial records confirm that this is the net income from the Interest Rate Reduction Scheme common enterprise, and, thus, is the consumer injury attributable to CCG's and MST's violations of the FTC Act and the TSR.

15. The Court finds that the Amended Complaint alleges that CCG and MST violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and Sections 310.3(a)(2)(x), 310.4(a)(5)(i), and 310.4(b)(1)(v) of the TSR, 16 C.F.R. Part 310, by participating in a common enterprise to market or sell a service purporting to lower the interest rates on consumers' debts, and as such is taken as established.

16. There is a reasonable likelihood that Defendants CCG and MST would engage in the same or similar activities as alleged in the FTC's Amended Complaint unless permanently enjoined from such acts and practices.

17. It is proper in this case to enter equitable monetary relief against Defendants for the consumer injury caused by their violations of the FTC Act, 15 U.S.C. § 45(a) and the TSR, 16 C.F.R. Part 310.

18. The Defendants are liable for injunctive relief, and are jointly and severally liable for the monetary relief entered in Section IV below.

19. This Order is in addition to, and not in lieu of, any other civil or criminal remedies that may be provided by law.

20. As Defendants have failed to answer the Complaint, and as Defendants are not represented by counsel, default judgment is **GRANTED** on Counts Two through Four and Six against CCG and MST.

21. Entry of this Order is in the public interest.

22. Pursuant to Fed. R. Civ. P. 54, there is no just reason for delay in entering this judgment.

## <u>DEFINITIONS</u>

For purposes of this Order, the following definitions shall apply:

1. **"Assets"** means any legal or equitable interest in, right to, or claim to, any real or personal property, including, but not limited to, chattel, goods, instruments, equipment, fixtures, general intangibles, inventory, checks, notes, leaseholds, effects, contracts, mail or other deliveries, shares of stock,

lists of consumer names, accounts, credits, premises, receivables, funds, or cash, wherever located, whether in the United States or abroad.

2. **"Assisting others"** includes, but is not limited to:  (1) performing customer service functions, including but not limited to receiving or responding to consumer complaints; (2) providing or arranging for the provision of billing or payment services, including but not limited to applying for or maintaining merchant accounts used to charge consumers; (3) developing or providing or arranging for the development or provision of sales scripts or other marketing materials; (4) providing, or arranging for the provision of, names of potential customers; or (5) performing marketing services of any kind including, but not limited to, telemarketing.

3. **"Debt Relief Services"** means any program or service represented, directly or by implication, to renegotiate, settle, or in any way alter the terms of payment or other terms of the debt between a person and one or more unsecured creditors or debt collectors, including, but not limited to, a reduction in the balance, interest rate, or fees owed by a person to an unsecured creditor or debt collector.

4. **"Defendants"** means Consumer Credit Group, LLC ("CCG") and My Success Track, LLC ("MST") and their successors and assigns.

5. **"Telemarketing"** means any plan, program or campaign that is conducted to induce the purchase of goods or services by means of the use of one or more

telephones, and which involves a telephone call, whether or not covered by the Telemarketing Sales Rule, 16 C.F.R. Part 310.

## ORDER

### I.
### PERMANENT BAN REGARDING TELEMARKETING

**IT IS THEREFORE ORDERED** that Defendants are permanently restrained and enjoined from engaging or participating in telemarketing, directly or through an intermediary, including, but not limited to, by consulting, brokering, planning, investing, marketing, or by providing customer service or billing or payment services.

Section III shall not be construed as an exception to this Section I.

### II.
### PERMANENT BAN REGARDING
### DEBT RELIEF SERVICES

**IT IS FURTHER ORDERED** that Defendants, whether acting directly or indirectly, are permanently restrained and enjoined from providing debt relief services or assisting others engaged in providing debt relief services.

Section III shall not be construed as an exception to this Section II

### III.
### PROHIBITED BUSINESS ACTIVITIES

**IT IS FURTHER ORDERED** that Defendants, Defendants' officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for

sale any good or service, are permanently restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication:

     A.     the total costs to purchase, receive, or use the good or service;

     B.     the terms of any policy regarding refunds, cancellations, exchanges, or repurchase; and

     C.     any other material fact, including but not limited to: any material restrictions, limitations, or conditions; or any material aspect of the performance, efficacy, nature, or central characteristics of the good or service.

## IV.
## MONETARY JUDGMENT

     A.     Judgment in the amount of **Eighteen Million, Four Hundred and Sixty- Eight Thousand, and Fifty-Eight dollars ($18,468,058)** is entered in favor of the Commission against Defendants, jointly and severally, as equitable monetary relief.

     B.     Defendants are ordered to pay to the Commission **Eighteen Million, Four Hundred and Sixty-Eight Thousand, and Fifty-Eight dollars ($18,468,058).**  Such payment must be made within 7 days of entry of this Order by electronic fund transfer in accordance with instructions provided by a representative of the Commission.

## V.
## ADDITIONAL MONETARY PROVISIONS

     **IT IS FURTHER ORDERED** that:

A.      Defendants relinquish dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order. Defendants also relinquish dominion over and all legal and equitable right, title, and interest in all assets held by the Receiver in the name of or for the benefit of Consumer Credit Group, LLC; My Success Track, LLC; Ideal Interest, LLC. Defendants shall not seek the return of any assets.

B.      The facts alleged in the Amended Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

C.      The facts alleged in the Amended Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D.      Defendants' Taxpayer Identification Numbers (Employer Identification Numbers) may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

E.      All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.  If a representative of the Commission

decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Amended Complaint.  Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement. Defendants have no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

## VI.
## LIFTING OF ASSET FREEZE

**IT IS FURTHER ORDERED** that the freeze against the assets of Defendants pursuant to Section II of the Order entered by this Court on October 17, 2012 (Dkt. 161) shall be modified to permit the payments and transfers identified in the Monetary Judgment and Additional Monetary Provisions Sections.  Upon completion of those payments and transfers, the asset freeze is dissolved.

## VII.
## CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendants and their officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them are permanently restrained and enjoined from directly or indirectly:

A.      Failing to provide sufficient consumer information to enable the Commission to efficiently administer redress. If a representative of the Commission requests in writing any information related to redress, Defendants must provide it, in the form prescribed by the Commission, within 14 days.

B.      Disclosing, using, or benefitting from customer information, including the name, address, telephone number, email address, Social Security Number, other identifying information, or any data that enables access to a customer's account (including a credit card, bank account, or other financial account) that any Defendant obtained prior to entry of this Order in connection with any activities alleged in the Amended Complaint; and

C.      Failing to dispose of such customer information in all forms in their possession, custody, or control within 30 days after entry of this Order. Disposal must be by means that protect against unauthorized access to the customer information, such as by burning, pulverizing, or shredding any papers, and by erasing or destroying any electronic media, to ensure that the customer information cannot practicably be read or reconstructed.

*Provided, however*, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

**VIII.**
**ORDER ACKNOWLEDGMENTS**

**IT IS FURTHER ORDERED** that Defendants obtain acknowledgments of receipt of this Order as follows:

A.      Defendants, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For 10 years after entry of this Order, each Defendant must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees, agents, and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled Compliance Reporting.  Delivery must occur within 7 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which a Defendant delivers a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

**IX.**
**COMPLIANCE REPORTING**

**IT IS FURTHER ORDERED** that Defendants make timely submissions to the Commission as follows:

A.      Within 180 days after entry of this Order, each Defendant must submit a compliance report, sworn under penalty of perjury. In that report, each Defendant must:

1.      Identify the primary physical, postal, and email address and telephone number, as designated points of contact, which

representatives of the Commission may use to communicate with that Defendant;

2.      Identify all of that Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses;

3.      Describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant;

4.      Describe in detail whether and how that Defendant is in compliance with each Section of this Order; and

5.      Provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

B.      For 10 years following entry of this Order, each Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following:

1.      Any designated point of contact; or

2.      The structure of any Defendant or any entity that Defendant has any ownership interest in or controls directly or indirectly that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any

subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

C.     Each Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or any similar proceeding by or against such Defendant within 14 days of its filing.

D.     Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.     Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: FTC v. Pro Credit Group, LLC, Matter No. X120037.

## X.
## RECORDKEEPING

**IT IS FURTHER ORDERED** that Defendants must create certain records for 10 years after entry of the Order, and retain each such record for 5 years. Specifically, Defendants must maintain the following records:

A.      Accounting records showing the revenues from all goods or services sold, all costs incurred in generating those revenues, and the resulting net profit or loss;

B.      Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name, addresses, and telephone numbers; job title or position; dates of service; and, if applicable, the reason for termination;

C.      Records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.      All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission; and

E.      A copy of each advertisement or other marketing material.

## XI.
## COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring Defendants' compliance with this Order and any failure to transfer any assets as required by this Order:

A.      Within 14 days of receipt of a written request from a representative of the Commission, Defendants must: submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents, for inspection and copying. The Commission is also authorized to obtain discovery, without further leave of court,

using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.      For matters concerning this Order, the Commission is authorized to communicate directly with Defendants.  Defendants must permit representatives of the Commission to interview any employee or other person affiliated with Defendants who has agreed to such an interview. The person interviewed may have counsel present.

C.      The Commission may use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities, to Defendants or any individual or entity affiliated with Defendants, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.


## XII.
## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.




The **CLERK** is **DIRECTED** to serve this order on the unrepresented parties and the counsel of record.  In the circumstance that the unrepresented

parties' address is not listed on CM/ECF, the CLERK is directed to use the

address provided in the return of service.


**DONE** and **ORDERED** in Tampa, Florida, this 3rd day of December, 2013.

MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE


**Copies furnished to:**
Counsel of Record
Any Unrepresented Person