**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

FEDERAL TRADE COMMISSION,

     Plaintiff,

v.                                                          Case No: 8:12-cv-586-T-35EAJ

PRO CREDIT GROUP, LLC, a Florida
limited liability company, BRETT FISHER,
individually and as an officer, owner,
director, member, or manager of Pro Credit
Group, LLC, SANDERS LEGAL GROUP,
P.A., a Florida corporation, SANDERS
LAW, P.A., a Florida corporation, ANDRE
KEITH SANDERS, individually and as an
officer, owner, director, member, or
manager of Sanders Legal Group, P.A.,
and My Success Track, LLC, MY
SUCCESS TRACK, LLC, a Florida limited
liability company, CONSUMER CREDIT
GROUP, LLC, a Florida limited liability
company, DALE ROBINSON, individually,
and as an officer, owner, director, member,
or manager of member of Consumer Credit
Group, LLC, FIRST FINANCIAL ASSET
SERVICES, INC., a Florida corporation and
WILLIAM BALSAMO, individually and as an
officer, owner, director, member, or
manager of Consumer Credit Group, LLC,

     Defendants.

_____

**ORDER OF FINAL DEFAULT JUDGMENT, PERMANENT INJUNCTION AND
<u>OTHER EQUITABLE RELIEF AS TO DEFENDANT PRO CREDIT GROUP</u>**

**THIS CAUSE** comes before the Court for consideration of Plaintiff's Motion for Entry of Default Judgment and Order for Permanent Injunction and Other Equitable Relief as to Defendant Pro Credit Group, LLC. (Dkt. 214) Upon consideration of all relevant filings, case law, and being otherwise fully advised, the Court hereby **GRANTS** Plaintiff's motion.

Plaintiff, the Federal Trade Commission ("Commission" or "FTC"), filed its Complaint on March 19, 2012 for a permanent injunction and other equitable relief in this matter, pursuant to Sections 13(b) and 19 of the Federal Trade Commission Act ("FTC Act"), 15 U.S.C. §§ 53(b) and 57b, and the Telemarketing and Consumer Fraud and Abuse Prevention Act ("Telemarketing Act"), 15 U.S.C. § 6101 *et seq*.  The Court granted leave to file and entered an Amended Complaint on November 14, 2012.  (Dkt. 183)  The FTC alleged that defendant Pro Credit Group, LLC, ("PCG"), along with several other corporations and individuals, violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and the FTC's Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310 (1995) (as amended), in connection with the alleged deceptive marketing of a service to lower consumers' credit card interest rates (the "LI service"), and violated Section 5(a) of the FTC Act in connection with processing payments from consumers that consumers did not owe and that consumers were coerced into paying through lies, threats and abusive phone calls from foreign call centers working with PCG and other defendants.

On March 21, 2012, Defendant PCG was properly served with the Complaint, Temporary Restraining Order, and other original pleadings in this case. (Dkt. 36)  On March 28, 2012, attorney Robert Eckard entered a notice of appearance on behalf of PCG and individual defendant Brett Fisher, (Dkt. 31), and on April 11, 2012 an Answer on behalf of those parties was filed, (Dkt. 72). On April 25, 2012, the Court entered a Stipulated Preliminary Injunction against defendants PCG and Brett Fisher.  (Dkt. 119)  On June 20, 2012, counsel for PCG moved to withdraw.  (Dkt. 143)  The Court granted that motion on August 28, 2012.  (Dkt. 152)   Because PCG is a company, and thus must be represented by counsel, the Court ordered PCG to obtain replacement counsel within twenty-one days from the date of the Order, failure of which "may result in the entry of a default judgment against [PCG] because it will be unable to defend itself in this action."  (Id. at 2)   To date, more than a year after that Order, PCG has failed to obtain replacement counsel.

The Amended Complaint was served via ECF upon the Court-appointed Receiver for PCG (Dkt. 183), without any response.  Moreover, a principal of the company, Brett Fisher, has engaged in this litigation on his own individual behalf pro se, and had notice of the claims pending against PCG; yet, he declined to cause it to retain counsel or otherwise defend itself herein.  On December 18, 2012, after reviewing the docket and determining that PCG had not obtained counsel, the Clerk entered a default against PCG.  (Dkt. 191).  On September 20, 2013, the FTC filed the instant motion.  As of the date of this Order, Defendant

has not retained counsel and has not answered Plaintiff's Amended Complaint. Further, no response to the instant motion has been filed and the time for doing so has elapsed.  The Court, having considered the FTC's Motion and evidence, finds that an order granting default judgment against PCG is appropriate.

Corporations cannot represent themselves *pro se* and neither principals of corporations nor their registered agents, who are not lawyers, can represent the interests of a corporation in a court of law.  See M.D. Fla. Local Rule 2.03(e); Palazzo v. Gulf Oil Corp., 764 F.2d 1381, 1385 (11th Cir. 1985)).   "Entry of a default judgment is a proper sanction for a defendant corporation's failure to obtain counsel."   See eComSystems, Inc. v. Shared Marketing Services, Inc., 8:10-CV-1531-T-33MAP, 2012 WL 1094317, at *2 (M.D. Fla. April 2, 2012). Further, "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules and that fact is made to appear by affidavit or otherwise, the clerk shall enter the party's default." Fed. R. Civ. P. 55(a).  However, a defendant's default alone does not require the court to enter a default judgment.  DIRECTV, Inc. v. Trawick, 359 F. Supp. 2d 1204, 1206 (M.D. Ala. 2005).  To enter a judgment, there must be a sufficient basis in the pleadings to support the entry of judgment.  Id.  "The defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law.  In short, . . . a default is not treated as an absolute confession of the defendant of

his liability and of the plaintiff's right to recover." Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank, 515 F.2d 1200, 1206 (5th Cir. 1975).[1]

Section 5 of the FTC Act prohibits "unfair or deceptive acts or practices in or affecting commerce[.]"   15 U.S.C. § 45(a).   An act or practice is deceptive under Section 5 if: "(1) there was a representation; (2) the representation was likely to mislead consumers acting reasonably under the circumstances; and (3) the representation was material."   FTC v. Transnet Wireless, 506 F. Supp. 2d 1247, 1266-67 (S.D. Fla. 2007) (citing FTC v. Tashman, 318 F.3d 1273, 1277 (11th Cir. 2003)).   "A representation is material if it is of a kind usually relied upon by a reasonably prudent person."   Id. (citing FTC v. Jordan Ashley, Inc., 1994-1 Trade Cas. (CCH) P 70570 at 72,096 (S.D. Fla. 1994)); FTC v. Amy Travel Serv., Inc., 875 F.2d 564, 573 (7th Cir. 1989).   "A presumption of actual reliance arises once the FTC has proved that the defendants made material misrepresentations, that they were widely disseminated, and that consumers purchased the defendants' product."   Transnet Wireless, 506 F. Supp. 2d at 1266-67 (quoting FTC v. Figgie Int'l, Inc., 994 F.2d 595, 605 (9th Cir. 1993)).   "Express claims, or deliberately made implied claims, used to induce the purchase of a particular product or service are presumed to be material."   Id.

The TSR prohibits, among other things: (1) requesting or receiving payment of any fee for any debt relief service until and unless the telemarketer has renegotiated or otherwise altered the terms of at least one debt pursuant to a

---

[1] Decisions of the Fifth Circuit entered prior to October 1, 1981, are binding on the Eleventh Circuit. Bonner v. City of Richard, 661 F.2d 1206, 1209 (11th Cir. 1981).

valid contractual agreement and the customer has made at least one payment pursuant to that agreement, 16 C.F.R. § 310.4(a)(5)(i); (2) misrepresenting, while engaged in telemarketing, material aspects of any debt relief service, including the amount of money that a customer may save by using such service, 16 C.F.R. § 310.3(a)(2)(x); and (3) initiating an outbound telephone call that delivers a prerecorded message to induce the purchase of a good or service unless the seller has obtained from the recipient of the call an express agreement, in writing, agreeing to receive calls that deliver prerecorded messages by or on behalf of a specific seller, 16 C.F.R. § 310.4(b)(1)(v)(A) and (B).

The Court, having considered the Amended Complaint, the FTC's Motion and evidence, and the other matters in record, finds and Orders as follows.

### Findings

1. This Court has jurisdiction over the subject matter and the parties.

2. Venue is proper in the Middle District of Florida.

3. The activities of Defendant PCG are in or affecting commerce, as defined in the FTC Act, 15 U.S.C. § 44.

4. The Amended Complaint charges that Defendant participated in deceptive acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, and abusive or deceptive telemarketing acts or practices in violation of the Telemarketing Sales Rule ("TSR"), 16 C.F.R. Part 310, in connection with debt

processing activities and the marketing or sale of a service purporting to lower the interest rates on consumers' debts.

5. The FTC has the authority under Sections 13(b) and 19 of the FTC Act, 15 U.S.C. §§ 53(b) and 57(b), to seek the relief it has requested.

6. Defendant was properly served with the Summons and Complaint on March 21, 2012.  Defendant was properly served with the Amended Complaint on November 14, 2012.

7. Defendant has not been represented by counsel in this action since August 28, 2012.  Defendant did not retain new counsel, despite this Court's Order that it do so.

8. Default was entered against Defendant PCG on December 18, 2012.

9. The factual allegations in the Commission's Amended Complaint are taken as true as against Defendant PCG.

10. As alleged in the Amended Complaint, Defendant PCG participated in a common enterprise to market or sell a service purporting to lower the interest rates on consumers' debts ("Interest Rate Reduction Scheme").  In addition to promising lower interest rates, as part of the Interest Rate Reduction Scheme, Defendant misrepresented to consumers that it had relationships with consumers' lenders, it would negotiate lower interest rates within a few months, consumers would save thousands of dollars as a result of Defendant's

negotiations, consumers would receive assistance from personal financial consultants, and consumers would receive full refunds upon request.

11. As alleged in the Amended Complaint, Defendant had no previous relationships with consumers' lenders and made no more than cursory efforts to lower consumers' interest rates. Instead, Defendant offered consumers a budget plan stating the obvious; namely, that consumers could pay off their credit cards early by incurring no new charges and making payments that exceeded the required monthly minimums. Consumers did not save thousands of dollars as a result of the Defendant's negotiations but spent hundreds of dollars on a service that provided little or no benefit. Further, the Defendant failed to provide consumers with the promised personalized financial consultants and, despite a purported no-questions-asked refund policy, made it as difficult as possible for consumers to obtain refunds.

12. Defendant PCG directly participated in the deceptive acts and practices of this Interest Rate Reduction Scheme.

13. As alleged in the Amended Complaint, Defendant PCG processed payments from consumers that they did not owe and were coerced into paying through lies, threats and abusive phone calls from foreign call centers working with Defendant ("Debt Collection Scheme").

14. Specifically, callers based overseas contacted consumers and told them that they were delinquent on payday loans or other debts. These callers

often claimed that they were law enforcement officers or lawyers or otherwise affiliated with law enforcement authorities. Callers threatened consumers with arrest or legal action if they failed to pay immediately and, in numerous instances, possessed consumers' personal information – such as Social Security Numbers or addresses – and used that information to convince consumers that they were legitimate debt collectors. Consumers paid the purported debts as instructed because they were afraid of the threatened repercussions.

15. PCG processed consumers' payments. PCG also fielded complaints from consumers and from the Better Business Bureau of Clearwater, Florida, about the callers' abusive practices and about the fact that consumers did not owe the money the callers sought. In August 2010, Defendant was contacted by a U.S. Secret Service agent conducting a criminal investigation stemming from consumer complaints spawned by the acts described above.

16. Despite knowledge of consumer complaints and the criminal investigation, PCG continued processing payments for the overseas callers without contracts or proof of the right to collect the debts.

17. Defendant PCG directly participated in the unfair practices of this Debt Collection Scheme.

18. As a result of the unfair and deceptive acts and practices set forth above in the Interest Rate Reduction Scheme and the Debt Collection Scheme, consumers have incurred injury of at least $25,283,238. Verified financial

records confirm that this is the net income from the Interest Rate Reduction Scheme common enterprise and from the Debt Collection Scheme, and, thus, is the consumer injury attributable to those schemes.

19.     The Court finds that PCG violated Section 5(a) of the FTC Act, 15 U.S.C. § 45(a), and Sections 310.3(a)(2)(x),  310.4(a)(5)(i), and 310.4(b)(1)(v) of the TSR, 16 C.F.R. Part 310, by participating in a common enterprise to market or sell a service purporting to lower the interest rates on consumers' debts and violated Section 5(a) of the FTC Act by participating in a Debt Collection Scheme by processing payments from consumers that consumers did not owe and that consumers were coerced into paying through lies, threats and abusive phone calls from foreign call centers.

20. There is a reasonable likelihood that Defendant PCG would engage in the same or similar activities as alleged in the FTC's Amended Complaint unless permanently enjoined from such acts and practices.

21. It is proper in this case to enter equitable monetary relief against Defendant for the consumer injury caused by its violations of the FTC Act, 15 U.S.C. § 45(a) and the TSR, 16 C.F.R. Part 310.

22. The Defendant is liable for injunctive relief, and is jointly and severally liable for the monetary relief entered in Section V below.

23. This Order is in addition to, and not in lieu of, any other civil or criminal remedies that may be provided by law.

24. As Defendant has failed to obtain new counsel or answer the Amended Complaint, and as Defendant is not represented by counsel, default judgment is **GRANTED** on Counts One through Four and Six against PCG.

25. Entry of this Order is in the public interest.

26. Pursuant to Fed. R. Civ. P. 54, there is no just reason for delay in entering this judgment.

## **DEFINITIONS**

For purposes of this Order, the following definitions shall apply:

1. **"Assets"** means any legal or equitable interest in, right to, or claim to, any real or personal property, including, but not limited to, chattel, goods, instruments, equipment, fixtures, general intangibles, inventory, checks, notes, leaseholds, effects, contracts, mail or other deliveries, shares of stock, lists of consumer names, accounts, credits, premises, receivables, funds, or cash, wherever located, whether in the United States or abroad.

2. **"Assisting others"** includes, but is not limited to:  (1) performing customer service functions, including but not limited to receiving or responding to consumer complaints; (2) providing or arranging for the provision of billing or payment services, including but not limited to applying for or maintaining merchant accounts used to charge consumers; (3) developing or providing or

arranging for the development or provision of sales scripts or other marketing materials; (4) providing, or arranging for the provision of, names of potential customers; or (5) performing marketing services of any kind including, but not limited to, telemarketing.

3. **"Debt Collection"** means any attempt to collect, directly or indirectly, debts owed or asserted to be owed, or due.

4. **"Defendant"** means Pro Credit Group, LLC ("PCG") and its successors and assigns.

5. **"Financial-Related Goods or Services"** means any product, service, plan, or program represented, expressly or by implication, to:

   a. provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving credit, debit, or stored value cards;

   b. improve, or arrange to improve, any consumer's credit record, credit history, or credit rating;

   c. provide advice or assistance to any consumer with regard to any activity or service the purpose of which is to improve a consumer's credit record, credit history, or credit rating;

   d. provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving a loan or other extension of credit;

   e. provide any consumer, arrange for any consumer to receive, or assist any consumer in receiving any service represented, expressly or by implication, to renegotiate, settle, or in any way alter the terms of

payment or other terms of any debt or obligation between a consumer and one or more secured or unsecured creditors, servicers, or debt collectors.

6. **"Telemarketing"** means any plan, program or campaign that is conducted to induce the purchase of goods or services by means of the use of one or more telephones, and which involves a telephone call, whether or not covered by the Telemarketing Sales Rule, 16 C.F.R. Part 310.

## ORDER

### I.
### PERMANENT BAN REGARDING TELEMARKETING

**IT IS THEREFORE ORDERED** that Defendant is permanently restrained and enjoined from engaging or participating in telemarketing, directly or through an intermediary, including, but not limited to, by consulting, brokering, planning, investing, marketing, or by providing customer service or billing or payment services.

Section IV shall not be construed as an exception to this Section I.

### II.
### PERMANENT BAN REGARDING
### FINANCIAL-RELATED GOODS OR SERVICES

**IT IS FURTHER ORDERED** that Defendant is permanently restrained and enjoined from advertising, marketing, promoting, or offering for sale, or assisting in the advertising, marketing, promoting, or offering for sale of any Financial-

Related Goods or Services.

Section IV shall not be construed as an exception to this Section II.

**III.**
**PERMANENT BAN REGARDING**
**DEBT RELIEF SERVICES**

**IT IS FURTHER ORDERED** that Defendant, whether acting directly or indirectly, is permanently restrained and enjoined from providing debt relief services or assisting others engaged in providing debt relief services.

Section IV shall not be construed as an exception to this Section II

**IV.**
**PROHIBITED BUSINESS ACTIVITIES**

**IT IS FURTHER ORDERED** that Defendant, Defendant's officers, agents, servants, employees, and attorneys, and all other persons in active concert or participation with them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service, are permanently restrained and enjoined from misrepresenting or assisting others in misrepresenting, expressly or by implication:

A.      the total costs to purchase, receive, or use the good or service;

B.      the terms of any policy regarding refunds, cancellations, exchanges, or repurchase; and

C.      any other material fact, including but not limited to: any material restrictions, limitations, or conditions; or any material aspect of the performance, efficacy, nature, or central characteristics of the good or service.

## V.
## MONETARY JUDGMENT

A.     Judgment in the amount of **Twenty-Five Million, Two Hundred Eighty- Three Thousand, Two Hundred Thirty-Eight Dollars ($25,283,238.00)** is entered in favor of the Commission against Defendant, jointly and severally, as equitable monetary relief.

B.     Defendant is ordered to pay to the Commission **Twenty-Five Million, Two Hundred Eighty-Three Thousand, Two Hundred Thirty-Eight Dollars ($25,283,238.00).**  Such payment must be made within 7 days of entry of this Order by electronic fund transfer in accordance with instructions provided by a representative of the Commission.

## VI.
## ADDITIONAL MONETARY PROVISIONS

**IT IS FURTHER ORDERED** that:

A.     Defendant relinquishes dominion and all legal and equitable right, title, and interest in all assets transferred pursuant to this Order. Defendant also relinquishes dominion over and all legal and equitable right, title, and interest in all assets held by the Receiver in the name of or for the benefit of Pro Credit Group, LLC.  Defendant shall not seek the return of any assets.

B.     The facts alleged in the Amended Complaint will be taken as true, without further proof, in any subsequent civil litigation by or on behalf of the Commission, including in a proceeding to enforce its rights to any payment or

monetary judgment pursuant to this Order, such as a nondischargeability complaint in any bankruptcy case.

C.      The facts alleged in the Amended Complaint establish all elements necessary to sustain an action by the Commission pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, 11 U.S.C. § 523(a)(2)(A), and this Order will have collateral estoppel effect for such purposes.

D.      Defendant's Taxpayer Identification Numbers (Employer Identification Numbers) may be used for collecting and reporting on any delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

E.      All money paid to the Commission pursuant to this Order may be deposited into a fund administered by the Commission or its designee to be used for equitable relief, including consumer redress and any attendant expenses for the administration of any redress fund.  If a representative of the Commission decides that direct redress to consumers is wholly or partially impracticable or money remains after redress is completed, the Commission may apply any remaining money for such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendant's practices alleged in the Amended Complaint.  Any money not used for such equitable relief is to be deposited to the U.S. Treasury as disgorgement. Defendant has no right to challenge any actions the Commission or its representatives may take pursuant to this Subsection.

## VII.
## LIFTING OF ASSET FREEZE

**IT IS FURTHER ORDERED** that the freeze against the assets of

Defendant pursuant to Part II of the Stipulated Preliminary Injunction as to

Defendants Brett Fisher and Pro Credit Group, LLC, entered by this Court on

April 25, 2012 (Dkt. 119) shall be modified to permit the payments and transfers

identified in the Monetary Judgment and Additional Monetary Provisions

Sections.  Upon completion of those payments and transfers, the asset freeze is

dissolved.

## VIII.
## CUSTOMER INFORMATION

**IT IS FURTHER ORDERED** that Defendant and its officers, agents,

servants, employees, and attorneys, and all other persons in active concert or

participation with them are permanently restrained and enjoined from directly or

indirectly:

A.      Failing to provide sufficient consumer information to enable the

Commission to efficiently administer redress. If a representative of the

Commission requests in writing any information related to redress, Defendant

must provide it, in the form prescribed by the Commission, within 14 days.

B.      Disclosing, using, or benefitting from customer information,

including the name, address, telephone number, email address, Social Security

Number, other identifying information, or any data that enables access to a

customer's account (including a credit card, bank account, or other financial

account) that any Defendant obtained prior to entry of this Order in connection with any activities alleged in the Amended Complaint; and

C.      Failing to dispose of such customer information in all forms in their possession, custody, or control within 30 days after entry of this Order. Disposal must be by means that protect against unauthorized access to the customer information, such as by burning, pulverizing, or shredding any papers, and by erasing or destroying any electronic media, to ensure that the customer information cannot practically be read or reconstructed.

*Provided, however*, that customer information need not be disposed of, and may be disclosed, to the extent requested by a government agency or required by law, regulation, or court order.

## IX.
## ORDER ACKNOWLEDGMENTS

**IT IS FURTHER ORDERED** that Defendant obtain acknowledgments of receipt of this Order as follows:

A.      Defendant, within 7 days of entry of this Order, must submit to the Commission an acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For 10 years after entry of this Order, Defendant must deliver a copy of this Order to: (1) all principals, officers, directors, and LLC managers and members; (2) all employees, agents, and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in the Section titled

Compliance Reporting.  Delivery must occur within 7 days of entry of this Order for current personnel. For all others, delivery must occur before they assume their responsibilities.

C.    From each individual or entity to which a Defendant delivers a copy of this Order, that Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

**X.**
**COMPLIANCE REPORTING**

**IT IS FURTHER ORDERED** that Defendant make timely submissions to the Commission as follows:

A.    Within 180 days after entry of this Order, Defendant must submit a compliance report, sworn under penalty of perjury. In that report, Defendant must:

1.    Identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission may use to communicate with Defendant;

2.    Identify all of the Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses;

3.    Describe the activities of each business, including the goods and services offered, the means of advertising, marketing, and sales, and the involvement of any other Defendant;

4.      Describe in detail whether and how the Defendant is in

compliance with each Section of this Order; and

5.      Provide a copy of each Order Acknowledgment obtained

pursuant to this Order, unless previously submitted to the

Commission.

B.      For 10 years following entry of this Order, Defendant must submit a

compliance notice, sworn under penalty of perjury, within 14 days of any change

in the following:

1.      Any designated point of contact; or

2.      The structure of Defendant or any entity that Defendant has

any ownership interest in or controls directly or indirectly that may

affect compliance obligations arising under this Order, including:

creation, merger, sale, or dissolution of the entity or any subsidiary,

parent, or affiliate that engages in any acts or practices subject to

this Order.

C.      Defendant must submit to the Commission notice of the filing of any

bankruptcy petition, insolvency proceeding, or any similar proceeding by or

against such Defendant within 14 days of its filing.

D.      Any submission to the Commission required by this Order to be

sworn under penalty of perjury must be true and accurate and comply with 28

U.S.C. § 1746, such as by concluding: "I declare under penalty of perjury under

the laws of the United States of America that the foregoing is true and correct.

Executed on: _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.      Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to: Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580. The subject line must begin: FTC v. Pro Credit Group, LLC, Matter No. X120037.

## XI.
## RECORDKEEPING

**IT IS FURTHER ORDERED** that Defendant must create certain records for 10 years after entry of the Order, and retain each such record for 5 years. Specifically, Defendant must maintain the following records:

A.      Accounting records showing the revenues from all goods or services sold, all costs incurred in generating those revenues, and the resulting net profit or loss;

B.      Personnel records showing, for each person providing services, whether as an employee or otherwise, that person's: name, addresses, and telephone numbers; job title or position; dates of service; and, if applicable, the reason for termination;

C.      Records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.      All records necessary to demonstrate full compliance with each

provision of this Order, including all submissions to the Commission; and

E.      A copy of each advertisement or other marketing material.

## XII.
## COMPLIANCE MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring

Defendant's compliance with this Order and any failure to transfer any assets as

required by this Order:

A.      Within 14 days of receipt of a written request from a representative

of the Commission, Defendant must: submit additional compliance reports or

other requested information, which must be sworn under penalty of perjury;

appear for depositions; and produce documents, for inspection and copying. The

Commission is also authorized to obtain discovery, without further leave of court,

using any of the procedures prescribed by Federal Rules of Civil Procedure 29,

30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.      For matters concerning this Order, the Commission is authorized to

communicate directly with Defendant.  Defendant must permit representatives of

the Commission to interview any employee or other person affiliated with

Defendant who has agreed to such an interview. The person interviewed may

have counsel present.

C.      The Commission may use all other lawful means, including posing,

through its representatives, as consumers, suppliers, or other individuals or

entities, to Defendant or any individual or entity affiliated with Defendant, without

the necessity of identification or prior notice.  Nothing in this Order limits the

Commission's lawful use of compulsory process, pursuant to Sections 9 and 20

of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## XIII.
## RETENTION OF JURISDICTION

**IT IS FURTHER ORDERED** that this Court retains jurisdiction of this

matter for purposes of construction, modification, and enforcement of this Order.


The **CLERK** is **DIRECTED** to serve this order on the unrepresented

parties and the counsel of record.  In the circumstance that the unrepresented

parties' address is not listed on CM/ECF, the CLERK is directed to use the

address provided in the return of service.


**DONE** and **ORDERED** in Tampa, Florida, this 3rd day of December, 2013.


MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE


**Copies furnished to:**
Counsel of Record
Any Unrepresented Person